TAYLOR & CO. ET AL. *v.* UNITED STATES (No. 2055).[1]

SECTION 300, TITLE III, WAR REVENUE ACT OF OCTOBER 3, 1917—PARAGRAPH N, SECTION III, TARIFF ACT OF 1913—LIQUIDATION—TIME WITHIN WHICH PROTEST MUST BE FILED.

Section 300, Title III, war revenue act of October 3, 1917, levies an additional tax of $2.10 for each proof or wine gallon on distilled spirits in bond, upon their withdrawal for beverage purposes. The provision of paragraph N, section III, tariff act of 1913, that protest must be filed within 30 days after liquidation can not refer the beginning of the 30 days to a time prior to withdrawal; and, where the collector reliquidated under said section 300 before withdrawal, a protest filed more than 30 days after the date of such determination by the collector, but within 30 days from withdrawal, is timely. Under such circumstances a protest filed before withdrawal is premature.

United States Court of Customs Appeals, February 17, 1921.

APPEAL from Board of United States General Appraisers, unpublished decision dated June 15, 1920.

[Modified.]

*Comstock & Washburn* (*Geo. J. Puckhafer* of counsel) for appellants.
*Bert Hanson,* Assistant Attorney General, (*John J. Mulvaney,* special attorney, of counsel), for the United States.

[Oral argument Jan. 20, 1921, by Mr. Puckhafer and Mr. Mulvaney.]

Before SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

Motion to dismiss certain protests granted by the Board of General Appraisers. Importers appeal from the orders of the Board dismissing said protests.

Certain distilled spirits imported at New York at various dates between March 31, 1917, and September 4, 1917, were entered for warehouse and the entries liquidated at $2.60 per gallon under para-

---

[1] T. D. 38636.

graph 237 of the tariff act of October 3, 1913. Thereafter, and on October 3, 1917, there was duly enacted by the Congress section 300 of the war revenue act, Title III, which reads:

SEC. 300. That on and after the passage of this act there shall be levied and collected on all distilled spirits in bond at that time or that have been or that may be then or thereafter produced in or imported into the United States, except such distilled spirits as are subject to the tax provided in section three hundred and three, in addition to the tax now imposed by law, a tax of $1.10 (or, if withdrawn for beverage purposes or for use in the manufacture or production of any article used or intended for use as a beverage, a tax of $2.10) on each proof gallon, or wine gallon when below proof, and a proportionate tax at a like rate on all fractional parts of such proof or wine gallon, to be paid by the distiller or importer when withdrawn, and collected under the provisions of existing law.   *   *   *

Such tax shall be collected by the collector of customs and deposited as internal-revenue collections, under such rules and regulations as the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, may prescribe.

The collector of customs at the port of New York prior to withdrawal reliquidated all of the said entries under the provisions of said act of October 3, 1917, levying thereupon $2.10 per gallon additional duties, and upon the quantities as shown by the gauger's original reports based on the landed condition, and a computation made in accordance with the relevant customs regulations.

Thereafter these protests were filed. Except as hereinafter noted, they were lodged within 30 days after duty payments and withdrawals, but more than 30 days after the reliquidations made by the collector under the provisions of said paragraph 300 of the war revenue act of October 3, 1917.

Counsel for the Government moved to dismiss the protests, and the board entertained those motions upon the ground that the protests were not timely, within the provisions of paragraph N, section III, of the tariff act of 1913, in so far as pertinent providing that the decision of the collector—

shall be final and conclusive against all persons interested therein, unless the owner, importer, consignee, or agent of such merchandise, or the person paying such fees, charges, and exactions other than duties, shall, within thirty days after but not before such ascertainment and liquidation of duties, as well in cases of merchandise entered in bond as for consumption,   *   *   *   file a protest or protests in writing with the collector,   *   *   *.

What amounts to the "liquidation" of duties by a collector under the provisions of this paragraph, in substantial language of the above, long a member of the administrative provisions of import tariff laws, has been the subject of frequent adjudication. One of the well-settled principles deduced therefrom is, that where goods are in bond perforce of warehouse entry and the duties unpaid, the right to protest does not arise until the withdrawal of the goods from bond where a different state of law or facts exist at the time of withdrawal from that existing at the time of the original liquidation. In

other words, stated as a concrete principle rather than a definition of enumerated rights, it seems to bo well established that where the law or the facts of the case postpone the final or possible final determination of the rate or amount of duty upon goods in bond until withdrawal, the importer's right to protest does not arise or commence to run until withdrawal. Protests filed prior to such time and protests filed beyond the statutory time thereafter are not timely.—Marriott *v.* Brune (9 How., 619); Barney *v.* Rickard (157 U. S., 352, 364); G. Falk & Bro. *v.* United States (146 Fed., 484).

The principle is applied in the last foregoing case in the following language:

> If, upon such withdrawal, it should appear that there was a change in the weight of the merchandise, and the collector should refuse to reconsider his previous action or to acquiesce in the claim of the importer, such refusal would constitute a definite and final ascertainment and liquidation of duties, against which a protest might be filed thereafter, but not before.

While this case was reviewed by the Supreme Court in 204 U. S., 143, and reversed upon other grounds, the Supreme Court took jurisdiction of the case and decided it without advertence to or reversal of the principles of decision here pertinent and clearly set forth in the opinion of the Circuit Court of Appeals.

While there are many interesting and relevant questions entering into this case, such as what was the appropriate rate of duty at the time of withdrawal, and what was the proper gauge of these importations at the time of withdrawal, we think, that for the purposes of this appeal, the issues here presented are, within the above quoted principle, determined by an advertence to the provisions of said section 300 of the act of October 3, 1917. It will be noted therefrom that at the time of withdrawal, and not before, the statute imposes upon the importer and vests in him the right to determine whether the goods are to be withdrawn for beverage purposes or nonbeverage purposes. Dependent upon whether withdrawn for beverage purposes or nonbeverage purposes is determined the applicable and proper rate of additional duty prescribed by section 300. Whatever may have been in the mind of the importer before or after is not made by the statute controlling. The only legal expression of his intention in this particular binding upon the Government and upon himself is by said section 300 fixed at the time of his withdrawal, and ex necessitate by his withdrawal entry. Until that time, therefore, and until that entry is made, the applicable rate of duties is not and can not be fixed. Until that time, therefore, the decision of the collector can not be final. Whether it was the same as the reliquidation or different, at the time of the filing of the withdrawal entry, the collector is, within the principle of the decisions quoted, called upon expressly or

impliedly upon such withdrawal to finally decide both the rate and the amount of duties accruing, according to the character of the withdrawal entry. In these cases, except as hereinafter mentioned, such withdrawal entries were duly filed and payment of duties finally impliedly exacted by the collector at that time. Within due statutory time thereafter, except as hereinafter mentioned, these protests were filed. It would seem therefore that they were timely.

The case is essentially different from Kennedy & Moon v. United States (9 Ct. Cust. Appls., 49; T. D. 37905), decided by this court. The withdrawal entries were therein filed June 9, 1914, and on the same day the merchandise was surrendered to the importers. On July 14, 1914, the collector actually liquidated the entries. No protest was filed, however, until May 3, 1915, almost a year after withdrawal and after subsequent actual liquidation. With the exceptions noted, all these protests were filed within 30 days after withdrawal.

The exceptions herein appear to have been in the case of entry 206664, wherein withdrawals were made on casks 14/15 and 17/23, and protest was filed prior to withdrawal. In the case of entry 192172, casks 2 to 8 were withdrawn for transportation more than 30 days prior to protest. These protests, therefore, were not timely, within the statutory requirements.

In all other cases, however, it is the opinion of the court that the protests were timely and the motions of the Government should have been denied. It is accordingly so decreed, and the cases remanded to the Board of General Appraisers for proceedings in accordance herewith.

*Modified.*

### CONCURRING OPINION BY BARBER, JUDGE.

By concurring, I desire to especially emphasize the fact that in my opinion section 300 of the act of 1917 fixes, without regard to any other statute or to any customs practice, the time for final liquidation for the purpose of ascertaining and collecting the customs duties on imported merchandise in bond levied by virtue of that section, and that such time is when the withdrawal entry is filed. Any ostensible or attempted liquidation for such purpose before that time, as was undertaken by the collector of the entries covered by these protests, was premature, and the importers rightfully ignored the same.

The collector in adhering to such premature liquidations by compelling the importers to pay the amounts thereby ascertained has, in effect, as stated in the opinion, impliedly, at least, reliquidated upon the filing of the withdrawal entries, and the protests as to such liquidations have been seasonably filed, except in the instances mentioned by the court.

The Board of General Appraisers seems to have regarded the premature liquidations as final, because not protested, without considering whether section 300 fixed the time of withdrawal as the time of final liquidation.    The importers are entitled to have these protests considered upon their merits.