UNITED STATES *v.* F. B. VANDEGRIFT & Co. (No. 3063)[1]

[1] T. D. 43455.

United States Court of Customs and Patent Appeals, June 12, 1929

*Charles D. Lawrence*, Assistant Attorney General (*Kenneth G. Osborn* and *Oscar Igstaedter* of counsel), for the United States.
*Comstock & Washburn* (*J. Stuart Tompkins* of counsel) for appellee.

[Oral argument October 12, 1928, by Mr. Igstaedter and Mr. Tompkins; reargued April 2, 1929, by Mr. Igstaedter]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court.

On December 12, 1922, appellee imported 47 bales of carbonized wool at the port of Philadelphia. It was entered for warehousing. On May 28, 1923, the entry was liquidated and the merchandise assessed with duty at 33 cents per pound and 20 per centum ad valorem under paragraph 1106 of the Tariff Act of 1922, which reads as follows:

PAR. 1106. Wool, and hair of the kinds provided for in this schedule, which has been advanced in any manner or by any process of manufacture beyond the washed or scoured condition, including tops, but not further advanced than roving, 33 cents per pound and 20 per centum ad valorem.

Appellee did not protest this liquidation.

On April 4, 1924, pursuant to the provisions of section 562 of the Tariff Act of 1922, appellee filed an application for permission to clean, sort, repack, or otherwise change in condition, but not to manufacture, 14 bales of the wool theretofore entered for warehousing. The pertinent part of section 562 reads as follows:

SEC. 562. * * * *Provided*, That upon permission therefor being granted by the Secretary of the Treasury, and under customs supervision, at the expense of the proprietor, merchandise may be cleaned, sorted, repacked, or otherwise changed in condition, but not manufactured, in bonded warehouses established for that purpose and be withdrawn therefrom for exportation, without payment of the duties, or for consumption, upon payment of the duties accruing thereon, in its condition at the time of withdrawal from warehouse. The scouring or carbonizing of wool shall not be considered a process of manufacture within the provisions of this section.

The application of appellee having been granted by the Secretary of the Treasury, the wool was repacked. Some of it was withdrawn from warehouse and entered for consumption on May 15, some on May 19, and the remainder on May 26, 1924. At the time of its withdrawal, it weighed 31 pounds less than at the time of its entry

for warehousing. The record contains no explanation of this loss of weight.

On July 1, 1924, the collector having refused to reliquidate, appellee filed a protest in which it was claimed that the merchandise was dutiable at its weight at the time of withdrawal from warehouse at 31 cents per pound under paragraph 1102 of the Tariff Act of 1922, which reads as follows:

PAR. 1102. Wools, not specially provided for, and hair of the Angora goat, Cashmere goat, alpaca, and other like animals, imported in the grease or washed, 31 cents per pound of clean content; imported in the scoured state, 31 cents per pound; imported on the skin, 30 cents per pound of clean content.

The court below, in an exhaustive opinion, sustained the protest. In concluding its opinion the court, after quoting the various sections of the tariff act involved, said:

Provisions analogous to these were construed in *United States* v. *G. Falk & Bro.*, 204 U. S. 143; T. D. 27832, affirming on the merits G. A. 5695, T. D. 25353.

It was held there that tobacco was dutiable on the weight at the time of entry rather than the weight at the time of withdrawal, the proviso concerning weight similar to that in section 319 being held to be of general application.

However, the enactment of section 562 (a new provision), in our opinion, changes the rule of the Falk case and controls over section 319, a change of weight on repacking under that section being expressly such a change as allows reliquidation on the new weight.

The importer being entitled to a reliquidation upon the new weight after repacking, the liquidation was open for all purposes and he was entitled to protest the erroneous classification.

Judgment will therefore issue sustaining the protest, with directions to the collector to reliquidate at the new weight on withdrawal and as carbonized wool at 31 cents per pound of clean content under paragraph 1102. * * *

The Government has appealed from the judgment below and makes the following claims in this court: First, that section 319 of the Tariff Act of 1922 requires that duties shall be levied and collected upon the weight of merchandise deposited in any public or private bonded warehouse at the time of its entry; second, that the provisions of section 319 prevail over the quoted provisions of section 562, *supra;* third, that, in view of the fact that nothing was done to the merchandise except to repack it, and as such repacking did not subject the merchandise to a rate of duty different from that assessed in the original liquidation, the collector was not required to reliquidate; and fourth, that, as it was not filed within 60 days from the date of liquidation, the protest was untimely, and the court below was without jurisdiction to consider it. All of these claims were made on the trial below.

The appellee contends that the protests were timely, and that, by virtue of the provisions of section 562, "the repacking of this merchandise in bonded warehouse constituted such a change in its condi-

tion as warranted liquidation upon the basis of its changed status or condition at the time of withdrawal."

It seems to be the theory of counsel for appellee, and it was the theory of the court below, that, because there was a change in the weight of the merchandise at the time of its withdrawal, due to repacking or to some other cause, the collector was required to reliquidate the entry and to assess duties in accordance with such weight.

Section 319 of the Tariff Act of 1922 reads as follows:

SEC. 319. That on and after the day when this act shall go into effect all goods, wares, and merchandise previously imported, for which no entry has been made, and all goods, wares, and merchandise previously entered without payment of duty and under bond for warehousing, transportation, or any other purpose, for which no permit of delivery to the importer or his agent has been issued, shall be subjected to the duties imposed by this act and to no other duty upon the entry or the withdrawal thereof: *Provided*, That when duties are based upon the weight of merchandise deposited in any public or private bonded warehouse, said duties shall be levied and collected upon the weight of such merchandise at the time of its entry.

It will be observed that section 319 provides "*That when duties are based upon the weight of merchandise deposited in any public or private bonded warehouse, said duties shall be levied and collected upon the weight of such merchandise at the time of its entry.*" (Italics ours.)

In the case of *United States* v. *G. Falk & Bro.*, 204 U. S. 143, the Supreme Court, in considering section 33 of the Tariff Act of 1897, the predecessor of section 319, *supra* (the two sections being identical), held that the proviso of section 33 was of general application and applied to all merchandise deposited in any public or private bonded warehouse, and that, when they were based upon weight, duties should be levied and collected upon the weight of the merchandise at the time of entry, and not at the time of its withdrawal from warehouse.

It is argued, however, by counsel for appellee, that the provisions of section 319, requiring duties to be assessed upon the weight of merchandise at the time of its entry, has no application to merchandise entered for warehousing, where it has been repacked or otherwise manipulated therein, and that, as to such merchandise, the provisions of section 562 require that duties shall be assessed according to its condition at the time of withdrawal from warehouse.

If it were not for the provisions of section 319, it might be argued with some plausibility that, as to merchandise repacked or otherwise manipulated in bonded warehouse, the provisions of section 562 should control, and that the merchandise should be liquidated or reliquidated, as the case might be, in accordance with its weight at the time of its withdrawal from warehouse.

Section 319, however, in most definite terms provides that, when duties are based upon the weight of merchandise deposited in bonded warehouse, such "duties shall be levied and collected upon the weight

of such merchandise at the time of its entry." It is a special provision and is limited to the assessment of duties based upon the weight of merchandise deposited in a bonded warehouse. Section 562 is not so limited. Its provisions extend to the condition, generally, of manipulated merchandise at the time of its withdrawal from warehouse.

In order to arrive at the intention of the Congress, the provisions of the two sections should be considered together, and they should be construed so as to give the provisions of one as much force and effect as the provisions of the other will permit. *Lehn & Fink, Inc.,* v. *United States*, 12 Ct. Cust. Appls. 359, T. D. 40519; *Nestle's Food Co., Inc.,* v. *United States*, 16 Ct. Cust. Appls. 451, T. D. 43199.

In view of these considerations we are of the opinion that it was not intended that the provisions of section 319 should be made wholly inoperative as to merchandise reconditioned in bonded warehouse. That some limitations were intended to be placed upon them, however, is evident. Confining this discussion for the moment to the precise issue before us, we may say that where, as in the case at bar, the dutiable status of merchandise has not been changed by cleaning, sorting, repacking, or by other lawful manipulation in bonded warehouse, the provisions of section 319 must be given full force and effect, and duties should be levied and collected upon the weight of such merchandise at the time of its entry, and not at the time of its withdrawal from warehouse. An entirely different situation is presented, however, when, due to lawful manipulation in bonded warehouse, the dutiable status of merchandise has been changed. Suppose, for illustration, that wool "imported in the grease" and dutiable at 31 cents per pound of clean content under paragraph 1102, supra, is deposited in bonded warehouse, and that thereafter it is carbonized; its dutiable status having been changed from "wool in the grease" to "scoured" wool, it is dutiable, not at 31 cents per pound *of clean content*, but at "31 cents per pound." *United States* v. *Stone & Downer*, 12 Ct. Cust. Appls. 293, T. D. 40296. The amount of duties assessable thereon would, of course, depend upon the total weight of the wool. Surely, under such circumstances, duties should be assessed upon the weight of the carbonized wool, rather than upon the weight of the wool "in the grease." Furthermore, "weight" is sometimes directly involved in the determination of the rate of duty—the classification of merchandise. For illustration, paragraph 719 provides for certain fish at 1 cent per pound net weight, when imported "in bulk, or in immediate containers weighing with their contents more than fifteen pounds each." See also pars. 718 and 720 of the Tariff Act of 1922. There are similar provisions in many other paragraphs of the act. Obviously, then, if an article imported in bulk should be repacked in bonded warehouse

into containers of such weight as to change the dutiable status of the merchandise, the provisions of section 562 would have application. It may be that occasions will arise when the question of the weight of merchandise may involve the application of the provisions of section 319 and also those of section 562.

We come now to a consideration of the third contention of the Government; that is, that, in view of the fact that nothing had been done to the merchandise in bonded warehouse, except to repack it, and as such repacking did not subject the merchandise to a rate of duty different from that assessed in the original liquidation, the collector was not required to reliquidate at the time of withdrawal.

It seems to be plain from the provisions of section 514 of the Tariff Act of 1922 (the protest section) that the collector has a right to liquidate entries of merchandise for warehousing prior to the withdrawal of the merchandise, and that it is incumbent upon an importer, if he be dissatisfied with the assessment of duties, to protest the liquidation or decision of the collector within 60 days after such liquidation or decision. *United States* v. *Andrews & Co., Inc.*, 14 Ct. Cust. Appls. 62, T. D. 41576. However, other provisions of law may require the collector to reliquidate an entry at the time of the withdrawal of merchandise fiom bonded warehouse. *Taylor & Co. et al.* v. *United States*, 11 Ct. Cust. Appls. 15, T. D. 38636; *Bertrose Co.* v. *United States,* 12 Ct. Cust. Appls. 19, T. D. 39893; *United States* v. *Peter McQuade*, 16 Ct. Cust. Appls. 334, T. D. 43080.

These cases involved the assessment of duties upon distilled spirits entered in bond for warehousing. In the *Taylor* case, *supra,* the court held that, as section 300 of the war revenue act of October 3, 1917, provided for a special tax on distilled spirits produced in, or imported into, the United States, at a rate depending upon whether the merchandise was withdrawn for beverage or other purposes, the applicable rate of duty could not be ascertained until the withdrawal entry was filed and it was determined whether the distilled spirits were to be withdrawn for beverage or other purposes. The court said:

What amounts to the "liquidation" of duties by a collector under the provisions of this paragraph, in substantial language of the above, long a member of the administrative provisions of import tariff laws, has been the subject of frequent adjudication. One of the well-settled principles deduced therefrom is that where goods are in bond perforce of warehouse entry and the duties unpaid, *the right to protest does not arise until the withdrawal of the goods from bond where a different state of law or facts exist at the time of withdrawal from that existing at the time of the original liquidation.* In other words, stated as a concrete principle rather than a definition of enumerated rights, *it seems to be well established that where the law or the facts of the case postpone the final or possible final determination of the rate or amount of duty upon goods in bond until withdrawal, the importer's right to protest does not arise or commence to run until withdrawal.* Protests filed prior to such time and protests filed beyond the statutory time thereafter are not timely.—

*Marriott* v. *Brune,* 9 How. 619; *Barney* v. *Rickard,* 157 U. S. 352, 364; *G. Falk & Bro.* v. *United States,* 146 Fed. 484.

\* \* \* \* \* \* \*

Until that time, therefore, and until that entry is made, the applicable rate of duties is not and can not be fixed. *Until that time, therefore, the decision of the collector can not be final. Whether it was the same as the reliquidation or different, at the time of the filing of the withdrawal entry, the collector is, within the principle of the decisions quoted, called upon expressly or impliedly upon such withdrawal to finally decide both the rate and the amount of the duties accruing, according to the character of the withdrawal entry.* (Italics ours.)

The decision in this case was followed by this court. in the *Bertrose Co.* case, *supra,* and in the *McQuade* case, *supra.*

In view of the principles announced in the above cases, it is necessary, for a proper determination of the issues here involved, to again refer to the provisions of section 562. Was it within the contemplation of the Congress, when these provisions were enacted, that merchandise manipulated in bonded warehouse might be subjected to different rates, or to different amounts of duty after manipulation? This question must be answered in the affirmative, otherwise the following language contained therein, "or for consumption upon payment of the duties accruing thereon, *in its condition at the time of withdrawal from warehouse,*" would be meaningless. (Italics ours.) This being so, we are at a loss to understand how the collector could determine the appropriate rate applicable to such merchandise or the amount of duty assessable thereon, except by a final ascertainment and liquidation. How can the·collector say, officially, that the repacking of merchandise does not subject it to a different rate of duty without an actual and formal ascertainment of such fact? How can he decide, without rendering a decision? Obviously, the only way he can officially determine the facts (and it is of no consequence whether they are or are not difficult of ascertainment) is by an official decision. Such decision involves classification and liquidation. *Bradford Co. et al. (United States impleaded)* v. *American Lithographic Co.,* 12 Ct. Cust. Appls. 318, 323; T. D. 40318. Furthermore, if it is the duty of the collector to reliquidate the entry when such merchandise is withdrawn from warehouse, his failure or refusal to do so would constitute a final decision against which a protest might thereafter be filed. *Taylor & Co.* v. *United States, supra.*

We are of opinion, therefore, that the provisions of section 562 require the collector to finally determine the rate and amount of duties at which such manipulated merchandise is to be assessed at the time of its withdrawal, and that the principles announced in the decisions in the *Taylor, Bertrose,* and *McQuade* cases, *supra,* are applicable to the issues here.

Some of the merchandise was withdrawn from bonded warehouse on the 15th, some on the 19th, and the remainder on the 26th of May, 1924. A protest was filed on July 1, 1924; it was filed, there-

fore, within 60 days from the time of withdrawal of the merchandise. The collector having refused to reliquidate the withdrawal entry at that time or at any subsequent time, we must hold that the protests were timely.

In the case of *United States* v. *Stone & Downer, supra,* we held that, as the purpose and effect of a carbonizing process was to free wool from substances such as burrs, grass, and seeds, it was a mere cleansing process; and, as wool so processed was not advanced beyond the scoured state, it was dutiable at 31 cents per pound under paragraph 1102.

As it does not appear that the carbonized wool involved in this case was further advanced than wool in the scoured state, it must be held to be dutiable under paragraph 1102, as claimed in the protests. However, duties should be assessed according to the weight of the merchandise at the time of its entry for warehousing.

For the reasons stated the judgment is *modified,* being *reversed* in so far as it requires the collector to reliquidate according to the weight of the merchandise at the time of its withdrawal from warehouse and in all other respects *affirmed.*

### DISSENTING OPINION

BLAND, J. and GARRETT, J.: It seems to us that the majority of the court in this case is reading into section 562 a purpose never intended by Congress. The phrase *"upon payment of the duties accruing thereon, in its condition at the time of withdrawal from warehouse"* was never intended to give the importer who warehoused his goods a right of action which he had lost by failing to protest within the time limit prescribed by the statute.

Let it be remembered that in this case the importer warehoused his wool at a time when the collector, without objection, assessed it with duty at 33 cents per pound and 20 per centum ad valorem. It was an incorrect assessment, as was later decided by this court, but the importer did not protest. After this court's ruling in *United States* v. *Stone & Downer,* 12 Ct. Cust. Appls. 293, T. D. 40296, importer made application for permission to repack the merchandise. There is no manner in which he could repack it that would change its dutiable status. See Schedule II, Tariff Act of 1922. A scouring or recarbonizing would probably have changed its dutiable status, which would have required a reliquidation, which importer might have protested.

The phrase *"Upon payment of the duties accruing thereon, in its condition at the time of withdrawal from warehouse"* was intended by Congress to require taking a duty on its *changed* condition, because the reconditioning, in a great many instances, would bring about a changed dutiable status.

If the majority of the court is right that this importer, by virtue of a repacking which does not change the dutiable status, is entitled to a reliquidation, then the court is wrong in holding that the weight at the time of withdrawal should not be taken. Section 319 has application to warehoused goods whose dutiable status was not changed by manipulation. If the importer was entitled to a reliquidation by virtue of a changed condition and thereby entitled to secure the application of a new rate of duty, clearly he would be entitled to have his goods reweighed upon withdrawal.

The result of the opinion of the majority of the court is that one having goods in warehouse may wait until some other litigant tries a case, permit the statute to run against him, and then, under the guise of reconditioning, which reconditioning does not change the dutiable status, secure for himself a right of trial denied to those who had entered goods at the same time but had entered them for consumption.

To our way of thinking it is a dangerous conclusion to say that Congress intended to provide that the owner of warehoused goods should have the statute of limitations extended to him when it is expressly denied to other classes of entrants.

There is an enormous amount of warehoused goods in the United States, and if the majority's opinion remains the law, it is fair to assume that there will be few protests against original liquidation of this character of merchandise, since it will only be necessary for the owner to petition to repack in order to extend the protest limitation for the full period of three years.

The judgment of the court below should be *reversed.*