(C. D. 923)

## A. GROVE KNUTSEN v. UNITED STATES

United States Customs Court, Third Division

(Decided May 2, 1945)

*Lawrence & Tuttle* (*George R. Tuttle* and *Frank L. Lawrence* of counsel) for the plaintiff.

*Paul P. Rao,* Assistant Attorney General (*William J. Vitale,* special attorney), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

KEEFE, Judge: The merchandise involved here consists of drums containing mineral oil which were regularly imported and entered

for warehouse under WHB 6474 on October 25, 1937. The entry was liquidated on August 15, 1938, and on February 14, 1939, one drum was withdrawn under withdrawal number 1616, and one under withdrawal number 1617. The withdrawals were made on customs Form 7506, conditionally free of duty as ships' supplies, under section 309 (a) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938. Duty was assessed on the drums at the rate of 25 per centum ad valorem under paragraph 328 of the Tariff Act of 1930, and it was paid when the drums were withdrawn from warehouse. No duty or tax, however, was levied upon the mineral oil contained in the drums, the collector being satisfied with the evidence before him that the oil was used as ships' supplies, and thus exempt from duty or tax.

The importer contends that when it is established that the oil contained in the drums is exempt from duty or tax by reason of use as ships' supplies, such evidence is sufficient to exempt the containers from duty. Plaintiff further contends that the discrimination between container and contents is contrary to the decision of our appellate court in *Atlas Marine Supply Co.* v. *United States*, 29 C. C. P. A. 20, C. A. D. 165.

The Government contends that the protest should be dismissed as untimely because it was filed more than 6 months after the date of liquidation, and that the demand and payment of duties were based upon the liquidation and therefore such demand does not constitute a decision or exaction against which a protest may be filed, citing *United States* v. *Mexican Petroleum Corp.*, 28 C. C. P. A. 90, C. A. D. 130. It is alternatively contended by the Government that the importer has failed to make out a *prima facie* case because there is no proof showing the final disposition of the containers.

Counsel for the plaintiff seemingly is in agreement with Government counsel that the protest is untimely, as the following statement appears in brief of counsel:

* * * since the protest was filed it has been held in *United States* v. *Holman*, 29 C. C. P. A. 3, C. A. D. 164, that where the tariff law has been amended, so that goods in bond have acquired a different tax status, it is the duty of the collector to reliquidate appropriately to the new conditions, in the manner prescribed by section 514, so that the importer may have opportunity to protest the decision of the collector. As a corollary the court held that the time for protest did not begin until that reliquidation occurred, and therefore a protest filed before that time was premature and should be dismissed. A like conclusion was reached in *Holman* v. *United States*, 29 C. C. P. A. 1, C. A. D. 163.

The principle of these decisions seems to be applicable to a case such as the present, and therefore counsel for plaintiff are unable to suggest any theory under which, despite the meritorious case of plaintiff, the court can do more than dismiss the protest on the ground that it is premature. With a ruling on this ground before him, the collector would assumably regard it as his duty to reliquidate the entry on the basis of the withdrawal here involved. If he did not at that time

refund the duty which has been erroneously imposed on the drums, in question, the importer could pursue his rights by a protest filed within 60 days after the reliquidation. Note *United States* v. *Astra Co.,* 28 C. C. P. A. 205, 213, C. A. D. 147, suggesting this course.

Inasmuch as counsel for both sides have raised the question of this court's jurisdiction to hear and decide this cause, a review of the authorities heretofore cited becomes pertinent.

In the *Mexican Petroleum Corp.* case, *supra,* lubricating oil imported and in warehouse was withdrawn as ships' supplies under section 309 (a) and placed on board a vessel as such. The withdrawal was made on November 2, 1936. The collector liquidated the entry for the first time on November 27, 1936, assessing a tax upon the oil under the Revenue Act of 1932. On January 29, 1937, *more than 60 days after liquidation,* a protest was filed. The court held that a subsequent demand by the collector for the payment of a liquidated duty "is not a decision or exaction against which a protest may be filed."

The events occurring which resulted in the dismissal of the *Holman* cases, *supra,* are not comparable to the situation here before us. The facts in those cases were practically the same. A review of *United States* v. *Holman, Inc.,* 29 C. C. P. A. 3, C. A. D. 164, discloses that the merchandise entered warehouse during the pendency of the Tariff Act of 1922. The collector liquidated the entries under the provisions of that act. The merchandise was withdrawn from warehouse after the Tariff Act of 1930 became effective. As there was no change in duty under the new act, the collector did not reliquidate the entries. Upon withdrawal the duty as liquidated under the act of 1922 was paid. Thereafter, the importer filed a written demand on the collector for a reliquidation of the entry or a reposting of the liquidation under the Tariff Act of 1930. The collector refused to comply therewith and protests were filed within 60 days after the collector's refusal. The protests claimed that the collector illegally refused to reliquidate, and alternatively, that such action as the collector took constituted reliquidations of the entries. Further claims were made in the protests that the merchandise was properly dutiable under various paragraphs of the Tariff Act of 1930 at lower rates of duty. Our appellate court in holding the protests untimely stated—

\* \* \* all decisions of the collector involved in the ascertaining and fixing of the rate and amount of duties chargeable against imported merchandise entered for consumption are merged in and become a part of a legal liquidation, and it is a legal liquidation only, *so far as the issues here are concerned,* against which a protest will lie. [Italics not quoted.]

In other words, when the circumstances are such that the importer desires to file a protest against a collector's classification, there must be a liquidation against which the same may be filed. In concluding the holding the court continued as follows:

We are in accord with the holding of the trial court in the instant case that *it is the duty* of the collector to liquidate the involved entries under the Tariff Act of 1930 in the manner provided by law so that the importer, if it sees fit to do so, may protest such liquidations within the time prescribed by section 514, *supra.* However, we are unable to agree that the provisions of section 514 authorize the filing of protests against the refusal of the collector to liquidate the involved entries under the Tariff Act of 1930 in the form and manner provided by law. We must hold, therefore, that as the collector has not liquidated the involved entries under the Tariff Act of 1930 as required by law, the involved protests are untimely and, accordingly, should have been dismissed by the trial court.

*United States* v. *Astra,* 28 C. C. P. A. 205, C. A. D. 147, was referred to in brief of plaintiff's counsel as suggesting that if a protest is held premature "the collector would assumably regard it as his duty to reliquidate the entry on the basis of the withdrawal here involved" and "if he did not refund the duty * * * erroneously imposed * * * the importer could pursue his rights by a protest filed within 60 days after the liquidation" (plaintiff's brief, p. 3). We do not understand the *Astra* case as suggesting any such course. There, certain merchandise entered for consumption was liquidated on November 28, 1934. The liquidation was posted in the customhouse on December 6, 1934, but such notice incorrectly stated the importer's name and also gave the incorrect date of entry. Some time after liquidation the collector called upon the importer for increased duties. The importer discovered the error in posting and called upon the collector to correctly post the liquidation, paying the increased duties demanded. The collector refused to repost the liquidation and protest was filed against such refusal.

Our appellate court there held that the protest was premature and untimely because, as the liquidation of the entry was never posted according to law, there was no final legal liquidation of the entry against which the importer may "within 60 days after, but not before such liquidation, file a protest." The court further held that inasmuch as the collector failed to give notice of the liquidation according to law, the 60-day period after the liquidation, within which the importer might protest, had not commenced to run. However, in referring thereto, the court held, as stated in the syllabus, that:

* * *. If the 60-day period within which the importer might protest did not commence to run because the collector *failed* to give notice of his liquidation in the form and manner prescribed by law, it could not be held to run merely because he *refused* to give such notice.

The court suggested, however, that it was the duty of the collector to complete his liquidation of the entry so that the importer, if it sees fit to do so, may protest the liquidation within the time prescribed by section 514.

The facts before us are not comparable to the facts in the *Astra* case, *supra.* Here, the entry was regularly liquidated while the goods remained in warehouse. Although the facts under which the mer-

chandise was withdrawn postponed the final determination of the duty thereon until withdrawal, the collector rested upon his prior liquidation and it would be an entirely useless procedure for him to reliquidate the entry. The importer is not deprived of any rights of protest as such rights have been preserved to him. The circumstances governing the withdrawals before us are entirely different from the facts in the *Mexican* and *Holman* cases, *supra*, and in our opinion are governed by our appellate court's decision in *Taylor* v. *United States*, 11 Ct. Cust. Appls. 15, T. D. 38636. There the court stated that it is—

\* \* \* well established that where the law or the facts of the case postpone the final or possible final determination of the rate or amount of duty upon goods in bond until withdrawal, the importer's right to protest does not arise or commence to run until withdrawal. Protests filed prior to such time and protests filed beyond the statutory time thereafter are not timely.

As in the *Taylor* case, *supra*, so here, the collector liquidated the entry while the merchandise was in warehouse and the question arising was whether or not the facts existing at the time of withdrawal, which, by reason of the provisions of section 309 (a), are different from the facts at the time of liquidation, postpone the final determination of the rate or amount of duty until the time of withdrawal. If they do, then the demand of the collector for payment of duty after the withdrawal from warehouse amounts to a decision against which a protest may be filed under the provisions of section 514.

For the reasons stated suggestions of counsel for the Government and the importer that the protest in this case is premature and should be dismissed for want of jurisdiction will not be adopted by this court.

The merits of the case are upon all fours with *Atlas Marine Supply Co.* v. *United States*, 29 C. C. P. A. 20, C. A. D. 165. There our appellate court held that the taxable status of drums containing oil withdrawn from warehouse as ships' supplies, under section 309 (a), "must be determined upon the same basis as that of the oil which they contained—that of use—and that in considering them for this purpose reason dictates that their relationship to their contents and their use in connection with same be regarded." Our appellate court was of the opinion that the drums had the status of ships' supplies when delivered, filled, on board the vessels, and it was immaterial what became of them thereafter. In that regard, the court took into consideration the affidavit of the masters of the vessels that the drums were not relanded from the vessels. In view of the evidence submitted in the case before us, and upon authority of the *Atlas* case, *supra*, it is clear that the drums in question are entitled to entry free of duty.

Judgment will be entered in favor of the plaintiff directing the collector to reliquidate the entry as to warehouse withdrawals numbered 1616 and 1617, and make refund of all duties demanded and collected upon the drums the subject of such withdrawals.