(C. D. 1259)

HENRY A. WESS, INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided July 19, 1950)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff.
*David N. Edelstein*, Assistant Attorney General (*John J. McDermott*, special attorney), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges

EKWALL, Judge: Claim in this case is made for allowance in duties on certain pitted cherries in brine in barrels which it is alleged were worthless at the time of importation. The collector of customs at the port of entry assessed duty thereon at the rate of 9½ cents per pound under the provisions of paragraph 737 of the Tariff Act of 1930. The two importations involved consisted of 220 barrels and 200 barrels, respectively. Out of this quantity plaintiff claims that two barrels contained no brine at the time of importation and were worthless. Therefore, it is claimed duty collected on said two barrels should be refunded.

No briefs have been filed. It was agreed at the hearing that the cherries in brine imported under these entries were examined under customs supervision prior to the release of the merchandise from customs custody, at which time the contents of one of the barrels weighing 252 pounds (entry 165), and the contents of the other

barrel (entry 166) weighing 235 pounds, were found by the customs inspector to be in bad order. The contents of these two barrels were subsequently examined by the deputy collector in charge at Cincinnati who found and reported them to be worthless by reason of deterioration; and the two barrels were segregated under customs supervision from the remainder of the shipments.

An examination of the consular invoices discloses that each bears a notation in red ink as follows:

> Cincinnati, Ohio—10/3/47
> 1 bbl.—Contents found
> worthless—no brine in
> bbl.        C. H. Petersen.
>        Relief Act. App.

underneath which is stamped:

> Deputy Collector in Charge

Farther down on the invoice, with an arrow pointing to the above notation, appears the following apparently in red pencil:

> Above report does not
> meet requirements of
> Sec. 15.10 (a) C. R. '43
>        J. L. M.

Section 15.10 (a), above referred to, is in the following language:

**Articles damaged and worthless at the time of importation.**—(a)   When a shipment of nonperishable merchandise, or any portion thereof which shall have been segregated from the remainder of the shipment under customs supervision at the expense of the importer, is found by the appraising officer to be entirely without commercial value by reason of damage or deterioration and is so reported to the collector by the appraiser, an allowance in duties on such merchandise on the ground of nonimportation shall be made in the liquidation of the entry.

> *        *        *        *        *        *        *

The collector in his report on the protest states that the appraiser made no finding of worthless merchandise.

The factory superintendent of the importer's plant testified that in line with his duty he was present when these two shipments were unloaded; that the customs inspector broke the seals of the railroad car in which the cherries were shipped in bond to Cincinnati from New York; that the two barrels and their contents were destroyed by being burned in the boiler at the plant. He further testified that customs inspectors were present at that time; that about a day elapsed between the time the cherries arrived in Cincinnati and the time they were destroyed. In reply to a question, the witness stated that the cherries were released from customs custody at the plant of the importer.

The position of the Government is that the merchandise was not examined by an officer of the appraiser's office but by an officer

from the collector's office and that, therefore, there was no compliance with the regulations (section 15.10, *supra*).

The facts surrounding the examination of this merchandise are set forth in the testimony of Mr. Clifford H. Petersen, the deputy collector of customs in charge at Cincinnati. He stated that he examined the contents of the two barrels in dispute. We quote the pertinent portion of his testimony as follows:

A.   Oh, on October 3rd, 1947, which incidentally was a Friday, I called at the plant of the Liberty Cherry & Fruit Company in connection with the Customs agent on a drawback matter. While there, my attention was invited to the two barrels of cherries in question before the Court at the moment. I personally observed the contents of each of the two barrels in question. Each barrel contained a decomposed worthless mass of soured cherries. I told Mr. Hamilton, the former witness, that I thought no further destruction would be necessary under Customs supervision, and if so he would be formally notified by telephone later that same day.

On returning to the office, I consulted the appraising officer and his examiner was absent, and on annual leave, and told him to expedite the matter. I suggested that he permit me to return these cherries as worthless and over my designation as relief acting appraiser. It later developed that my title as Relief Acting Appraiser had been prior to October 3, 1947, removed or revoked. The Appraiser consented at that time, that is on October 3, 1947, to permit this matter to be handled as I suggested. The following week, the records indicate I was on annual leave, and so approximately ten days later the Appraiser informed me that he would be unable to make his return on the invoice with any indication on the invoice showing my designation as Relief Acting Appraiser. It was then too late to notify the importer that another method of disposition would be necessary inasmuch as the contents of the two barrels were entirely disposed of not under Customs supervision. The Appraiser requested to approve my action, but desired not to do so, and I made every attempt in the sense of fairness to have the Collector's office in Cleveland, Ohio, to make some allowance under some provision of law or regulation in the liquidation of the two barrels in question but was not successful in my attempt. The entry was liquidated or rather I should say the entries were liquidated without any allowance being made for the two barrels in question in the duty.

Q.   Just one question. At the time you examined the two worthless barrels in the plant of the Liberty Cherry and Fruit Company, did you believe that you could properly act as a Relief Acting Appraiser?—A.   I certainly did because I had never been notified of that title or that I was no longer acting in that capacity.

JUDGE RAO:   And there was no Appraiser present at that time, was there?

THE WITNESS:   Not at the plant.

JUDGE RAO:   He was away on leave?

THE WITNESS:   The Examiner was away on leave, but the Appraiser's officer was there.

JUDGE RAO:   And if I recall your testimony correctly, you had consulted with him and he knew about the condition of these cherries?

THE WITNESS:   That is right.

As we understand the Government's position there is no dispute but that these two barrels were worthless, but as they were not

examined by an officer of the appraiser's office, no allowance can be made because of lack of compliance with said section 15.10.

The record shows that they were examined by a customs official acting under color of authority. He made a report on the invoices in which he stated that the contents of the barrels were worthless. The fact that he was in error in his belief that at that time he was a relief acting appraiser should not be allowed to work an injury and injustice upon an importer who relied upon the action of a customs official whose lack of authority to take such action was not discovered until too late.

In the case of *Balfour, Guthrie & Co.*, T. D. 37295, G. A. 8083, it was held that the regulation there involved should have a reasonable construction. In that case, the regulation under consideration was one prescribed by the Secretary of the Treasury for the administration of the ships' equipment provision of the law, requiring a certain inspection by a customs officer or special agent upon the request and under the direction of the collector. It was held that the inspection was one which the collector, rather than the importer, must bring about, and that his failure to do so did not annul the rights of the importer under the statute. In the case of *de Lima Correa & Cortissoz (Inc.)*, T. D. 39623, G. A. 8646, it was held that if the collector fails to bring about an inspection of merchandise and to send a certificate of exportation to the American consul, as required by the regulations there under consideration, thereby preventing the importer upon the return of his merchandise from complying with the regulations prescribed to govern its free entry, the rights of the importer under the statute are not annulled.

So in the case at bar, we find that the failure of the Government officials to comply with the regulations, in a situation such as that presented by this case, does not annul the rights of the importer under the statute.

Upon the record we find that plaintiff's claim for free entry of the two barrels of worthless cherries should be and the same hereby is sustained.

Judgment will be rendered accordingly.