(C. D. 1598)

THE AMERICAN DISTILLING COMPANY *v.* UNITED STATES

United States Customs Court, Third Division

(Decided March 18, 1954)

*Haskell Titchell* and *Norman A. Eisner* for the plaintiff.
*Warren E. Burger*, Assistant Attorney General (*Samuel D. Spector*, trial attorney), for the defendant.

Before EKWALL and JOHNSON, Judges

EKWALL, Judge: This is a protest against the assessment by the collector at San Francisco on January 29, 1952, of internal revenue tax on 2 hogsheads of sherry wine at $2 per gallon, under section 3030 (a) (1) (A) and section 1650 of the Internal Revenue Code (26 U. S. C. § 3030 (a) (1) (A) and § 1650). It is claimed that the entry covering this merchandise was liquidated at the port of Peoria, Ill., on July 7, 1950, at which time the tax was computed at the rate of 60 cents per gallon, and that the later demand for tax at the increased rate is illegal and void.

The case was submitted on the official file and on other documents offered in evidence by the plaintiff.

From these papers, it appears that 5 hogsheads of sherry wine were exported from Spain on January 9, 1946, and imported into the United States on November 5, 1948. They were entered for warehouse at the port of Peoria on December 8, 1948, under entry No. 33–P. On or about December 21, 1948, the U. S. Customs Laboratory at Chicago reported that the merchandise contained 20.2 per centum alcohol by volume. Thereafter, on or about March 28, 1950, the merchandise was transported under bond to San Francisco under transportation entry No. 24–P and entered for rewarehousing on April 10, 1950, under entry No. 4938. On this entry, duty was computed at $1.25 per gallon and the internal revenue tax at 60 cents per gallon. No question has been raised in regard to the duty, and no further reference to it will be made herein.

On or about April 10, 1950, 1 hogshead was withdrawn for consumption. The warehouse withdrawal computes the internal revenue tax at 60 cents per gallon and the paper is stamped "Paid Apr 10 1950." A report of the U. S. Customs Laboratory at San Francisco, dated April 13, 1950, states that the merchandise contained 20.7 per centum alcohol by volume.

On or about June 1, 1950, 2 more hogsheads were withdrawn for consumption. The warehouse withdrawal computes the internal revenue tax at 60 cents per gallon, and the paper is stamped "Paid Jun 1 1950." A report of the U. S. Customs Laboratory at San Francisco, dated June 2, 1950, states that the merchandise contained 20.9 per centum alcohol by volume.

On or about August 10, 1950, the last 2 hogsheads, those involved herein, were withdrawn for consumption. The warehouse withdrawal computes the internal revenue tax at 60 cents per gallon, and the paper is stamped "Paid Aug 10 1950." A report of the U. S. Customs Laboratory at San Francisco, dated August 11, 1950, states that the merchandise contained 21.1 per centum alcohol by volume.

The transportation entry made out in Peoria (No. 24–P), covering the 5 hogsheads, indicates that the internal revenue tax was computed at 60 cents per gallon. This paper is stamped "Liquidated Jul 7–1950."

The rewarehouse entry made at San Francisco (entry No. 4938) covering the 5 hogsheads is stamped "Liquidated Jan 29 1952 U. S. Customs." At that time, internal revenue tax was assessed on the merchandise contained in the 2 hogsheads here involved at $2 per gallon.

Section 3030 (a) (1) (A) of the Internal Revenue Code provides:

Upon all still wines, including vermouth, and all artificial or imitation wines or compounds sold as still wine produced in or imported into the United States after June 30, 1940, or which on July 1, 1940, were on any winery premises or other bonded premises or in transit thereto or at any customhouse, there shall be levied, collected, and paid taxes at rates as follows, when sold or removed for consumption or sale:

The rates in effect at the times involved herein were those contained in section 1650 of the Internal Revenue Code, namely, 60 cents per gallon on wines containing over 14 per centum and not over 21 per centum alcohol, and $2 per gallon on wines containing over 21 per centum and not over 24 per centum alcohol.

It has been held that under the internal revenue law taxes are imposed upon liquors in bond, whether imported or domestic, upon the quantity actually withdrawn for consumption. *Louis T. Snow & Co.* v. *United States*, 21 Cust. Ct. 13, C. D. 1118; *United States* v. *R. C. Williams & Co., Inc.*, 40 C. C. P. A. (Customs) 130, C. A. D. 508. Likewise, the rate of tax to be assessed under section 3030 (a) (1) (A) of the Internal Revenue Code must be computed upon the basis of the percentage of alcohol in the wine at the time of withdrawal. In the instant case, this percentage apparently increased between the time the merchandise was entered for warehouse and the time it was withdrawn. For that reason, the collector demanded the tax at the increased rate.

The question before us is whether the collector at San Francisco had the right to make such assessment. Plaintiff claims he did not, on the ground that the entry had been liquidated at Peoria, and the collector could not make a demand for additional taxes thereafter, citing *United States* v. *Westco Liquor Products Co.*, 38 C. C. P. A. (Customs) 101, C. A. D. 446. Defendant claims that that case is in-

applicable because the regulations affecting the instant case are different and on the further ground that there was no liquidation at Peoria on July 7, 1950, and that, therefore, the liquidation of January 29, 1952, is the only valid liquidation herein.

On transportation entry No. 24–P is a stamped notation "Liquidated Jul 7–1950." This document was received in evidence without objection by the defendant, and no evidence was presented tending to show that there had been no liquidation at that time. Section 16.2 (d), Customs Regulations of 1943, provides that when entries are liquidated, they shall be stamped "Liquidated" with the date and that such stamping shall be deemed the legal evidence of liquidation. Among the official papers, is a memorandum from one A. H. Weston of the plaintiff company, stating:

* * * The Deputy Collector of Customs at Peoria advises that he sent the Collector at San Francisco a copy of his liquidation notice on July 7, 1950 and made a notation thereon that the wine contained "Over 14% and Under 21%" alcohol by volume.

The documents in the official file were received in evidence without objection on the part of the defendant and may, therefore, be considered by the court. *W. T. Grant Company* v. *United States*, 38 C. C. P. A. (Customs), 57, 63, C. A. D. 440; *United States* v. *Toledo Museum of Art*, 25 C. C. P. A. (Customs) 373, 381, T. D. 49455.

We conclude that it has been established *prima facie* that there was a liquidation at Peoria on July 7, 1950. This *prima facie* evidence is not overcome by reference to certain regulations (section 16.3 (c) and 16.10 (h), Customs Regulations of 1943), which provide that merchandise which has been withdrawn for transportation to another port shall be excluded from the liquidation, and that the liquidation of alcoholic beverages shall be made at the port at which the merchandise is withdrawn. It may be that under the regulations, the collector at Peoria should not have liquidated the entry, but apparently he did so. Failure of the collector to comply with the regulations cannot annul the rights of the importer. *Henry A. Wess, Inc.* v. *United States*, 25 Cust. Ct. 34, C. D. 1259; *Armour and Company* v. *United States*, 29 Cust. Ct. 296, C. D. 1482, and cases there cited. Since all of the merchandise was transported to San Francisco, it cannot be claimed that the portion involved herein was excluded from the liquidation.

The next question is the effect of said liquidation.

The collector has a right to liquidate warehouse entries prior to the withdrawal of the merchandise, and, ordinarily, the plaintiff's right to protest and the collector's right to reliquidate terminate at the expiration of the 60-day period after liquidation. *Merritt* v. *Cameron*, 137 U. S. 542; *United States* v. *F. B. Vandegrift & Co.*, 17 C. C. P. A. (Customs) 127, T. D. 43455; *United States* v. *Andrews & Co. (Inc.)*, 14 Ct. Cust. Appls. 62, T. D. 41576; *Hiram Walker & Sons, Inc.* v.

*United States*, 25 C. C. P. A. (Customs) 189, T. D. 49293 (affirmed on rehearing, 26 C. C. P. A. (Customs) 121, C. A. D. 4); *John S. Phipps* v. *United States*, 22 C. C. P. A. (Customs) 595, T. D. 47601.

However, where the law or the facts of the case postpone the final or possible final determination of the rate or amount of duties or taxes until withdrawal of the merchandise, the collector's liquidation does not become effective until withdrawal. Consequently, the importer's time to protest the liquidation does not begin to run until withdrawal and is timely if made within 60 days thereafter. *Taylor & Co.* v. *United States*, 11 Ct. Cust. Appls. 15, T. D. 38636; *Bertrose Co.* v. *United States*, 12 Ct. Cust. Appls. 19, T. D. 39893; *United States* v. *F. B. Vandegrift & Co.*, *supra*; *Matson Navigation Co.* v. *United States*, 14 Cust. Ct. 110, C. D. 921. Likewise, since the collector's time to reliquidate terminates 60 days after the effective date of liquidation, he cannot make a reliquidation or a demand not based upon the original liquidation after that time. *John S. Phipps* v. *United States, supra*; *United States* v. *Westco Liquor Products Co., supra*; *Joseph E. Seagram & Sons, Inc.* v. *United States*, 15 Cust. Ct. 95, C. D. 951.

In the instant case, the involved merchandise was withdrawn from warehouse on August 10, 1950, at which time the liquidation of July 7, 1950, became effective as to it. At that time the collector apparently made no demand for increased taxes but accepted payment at the rate of 60 cents per gallon. He was advised immediately thereafter by the report of the U. S. Customs Laboratory that the wine contained 21.1 per centum alcohol by volume, thus being subject to tax at the rate of $2 per gallon. However, the collector did not reliquidate within the 60-day period after withdrawal, but waited until over a year had passed before reliquidating and demanding the increased tax. The collector's action is, therefore, illegal and void.

The facts in *United States* v. *Westco Liquor Products Co., supra*, are similar to those involved herein. There, the merchandise was entered for warehousing at San Francisco on or about January 6, 1944. The entry was liquidated on June 7, 1944, at which time internal revenue tax was assessed at 60 cents per gallon. The merchandise was withdrawn on January 22, 1945, March 27, 1945, and October 26, 1945, and the tax paid. On November 16, 1945, the collector demanded an additional payment on the ground that on withdrawal the wine contained over 21 per centum alcohol. On January 26, 1948, the entry was reliquidated. The court held that the internal revenue tax attached at the time of importation and was included in the liquidation, and, since the demand was made after the liquidation had become final and conclusive, it was illegal and void. The court did not discuss the principle that, in certain circumstances, a liquidation does not become effective until withdrawal, but, as the facts outlined above indicate, the reliquidation occurred much more than 60 days

after withdrawal, and the demand was made more than 60 days after two of the withdrawals. No separate consideration was given to the third portion, as to which the demand was made within 60 days after withdrawal and may, therefore, have been effective. *Cf. United States* v. *Peter McQuade,* 16 Ct. Cust. Appls. 334, T. D. 43080; *A. Grove Knutsen* v. *United States,* 14 Cust. Ct. 116, C. D. 923.

In the instant case, the demand for increased taxes was not made until the reliquidation, which occurred long after withdrawal. It is clear, therefore, that it is illegal and void.

For the reasons stated, the protest is sustained, and judgment will be rendered in favor of the plaintiff, directing the collector to make refund accordingly.