(C. D.. 184)

OLDETYME DISTILLERS, INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided June 21, 1939)

*Benjamin A. Levett* (*Meyer Ohlbaum* of counsel) for the plaintiff.
*Webster J. Oliver*, Assistant Attorney General (*Joseph F. Donohue*, special attorney), for the defendant.

Before CLINE, EVANS, and KEEFE, Judges; CLINE, J., not participating

EVANS, Judge: The above-enumerated protests were consolidated for trial in the one case. This is an action against the United States

wherein the importer seeks to recover certain sums of money claimed to have been illegally withheld by the Government on certain importations of whisky manufactured in Cuba and entered under bond for warehouse at the port of New York during the months of April, May, and June 1935. It was assessed for duty under paragraph 802 of the Tariff Act of 1930 at $5 per proof gallon, but, by virtue of the Cuban Trade Agreement effective September 3, 1934 (T. D. 47232), the importer was allowed a 20 per centum reduction from said rate of duty, that is, the importer actually paid a duty of $4 per proof gallon. Because a portion of the whisky remained in bonded warehouse until after the effective date of the trade agreement between the United States and the Dominion of Canada, said effective date being January 1, 1936 (T. D. 48033, 68 Treas. Dec. 794), it is claimed that the importer is entitled to the reduction of duty made by said Canadian Trade Agreement, plus the 20 per centum reduction granted to the products of the soil or industry of the Island of Cuba by virtue of the Cuban Trade Agreement, *supra*, because, it is alleged, said liquor was aged in wood more than four years prior to the date the whisky was withdrawn from warehouse for consumption. This claim is made by reason of the terms of the said Canadian Trade Agreement, which provide that the rates of duty therein set forth shall be applicable to "articles the growth, produce, or manufacture of all foreign countries."

The protests as originally prepared claim the 20 per centum reduction by virtue of the reciprocity agreement between the United States and Cuba of December 11, 1902, but a timely amendment was filed which bases the claim herein asserted upon the trade agreement between the United States and the Republic of Cuba concluded August 24, 1934, effective September 3, 1934, T. D. 47232. We mention this because of the fact that article XVI of the Cuban Trade Agreement, *supra*, assumes to suspend the operation of the commercial convention concluded between the United States and the Republic of Cuba on December 11, 1902, as of the effective date of the said Cuban Trade Agreement. However, paragraph three of article III of the said Cuban Trade Agreement carries this provision:

Every article the growth, produce or manufacture of the Republic of Cuba which is not provided for in Article I, and which is not enumerated and described in Schedule II annexed to this Agreement, shall, on importation into the United States of America, be granted an exclusive and preferential reduction in duty of not less than 20 per centum, such percentage of reduction being applied to the lowest rate of duty now or hereafter payable on the like article the growth, produce, or manufacture of any other foreign country.

The trade agreement between the United States and the Dominion of Canada, *supra*, carries the following provision in schedule II thereof:

| Tariff Act of 1930 paragraph | Description of article | Rate of duty |
|---|---|---|
| 802 | Whiskey of all types and classes_____ *Provided*, That this provision shall not apply to any whiskey consisting in whole or in any part of distilled spirits which have not been aged in wooden containers at least four years prior to the date the whiskey is entered, or withdrawn from warehouse, for consumption. | $2.50 per proof gal. |

When the case was called for trial the importer produced a number of witnesses who testified to their familiarity from one viewpoint or another with the merchandise imported, but upon the question of the age of the liquor the importer called Mr. Charles Heim, who stated that in 1929 he was director of the Federal Distillery in Canada and one of the principal stockholders of the Mill Creek Distillery in Havana, Cuba. He stated further that as a stockholder he was visiting in Cuba in 1929 and that he was president of the Mill Creek Distillery beginning in January 1931, until about the middle of 1934. He also said that he made the contract with the Oldetyme Distillers for the sale of the liquor here involved. This witness then gave the following testimony:

Q. What did you do yourself as to picking out the whisky that was sent on the shipments here in question?—A. Well, I went into the warehouse——

Q. Just state what you did.—A. I * * * took a couple of men into the warehouse and we pulled them out, weighed them; we regauged them and put them in one side of the warehouse to get them ready for shipment. We had to restamp them on the other side with the address of the buyer, and some of the barrels had to be tightened. We had to put them in proper shape for shipment.

* * * * * * *

Q. When you shipped this whisky—I understood you to say when you got the order you went and picked out some barrels that were marked 1929; is that right?—A. That is right.

Q. You did that yourself?—A. Yes, sir.

Q. And did you see that was the whisky that was shipped to the Oldetyme under this agreement?—A. Yes, sir.

Q. And all of the importations here concerned were part of that whisky that you picked out that was marked 1929, is that right?—A. That is right.

The next witness, Mr. Leo Schwartz, who was rectifier and plant manager for the Oldetyme Distillers, stated that he had been in the liquor business about thirty-five years and that it was his business to blend various whiskies, spirits, and so forth, and see that it is clean and bottled, etc.; running the plant; that he had a couple of hundred people working for him. He further stated that he had been with one firm for eighteen years, where his business was to examine whiskies, match whiskies, blend whiskies, etc., and that since 1933 he has been doing the same thing. He further stated that he was tasting daily, two or three hundred tests which he makes by taste and by color. He also stated that he could tell whether liquor was

mature by its taste and that liquor was mature when it was over four summers old. This witness also testified that he examined, tasted, tested, and blended every barrel of the imported liquor, and that it was all mature whisky and by that he meant whisky over four years of age; that for the purpose of stating the age of the whiskies used in blending he always relied on the background, that is, the information contained on the barrels or documents or whatever disclosed the exact age. When asked how he could determine how liquor was mature he said:

By taste and by at times testing—testing with spirits or younger whisky to see whether it has the effect that a matured whisky is supposed to have, if I cannot determine it by taste.

He was then asked:

Q. And when you examined this whisky here in question what did you find so far as age was concerned?—A. I found it is a matured whisky, answers the purpose I needed it for, as matured, which is an aged whisky which is over the 4 summers old.

The Government called a special agent who identified certain documents taken from official records kept by the Cuban Government relating to the Mill Creek Distillery, and gave other testimony with reference to apparent confusion that exists on the records of that distillery as compared to the bills of lading and invoices in the instant shipment. Such testimony, unexplained or uncontradicted, tends to cast suspicion upon the shipping records. However, the bills of lading and customs records identifying this liquor as having come from the Mill Creek Distillery in Cuba, coupled with the sworn, uncontradicted testimony as to its selection there and shipment, plus the testimony of the experienced blender of whiskies as to its age, persuades the court that the importer has made out a case, and that he is entitled to a refund of the duty advanced upon the whisky that remained in warehouse at the time of the effective date of the Canadian Trade Agreement, to wit, January 1, 1936, so far as the barrel numbers under the various entries involved were identified at the trial and are set forth in schedule A hereto attached and made part of this decision. It is noted that in the brief for the plaintiff the barrel numbers under the respective entries as to which claim is pressed are set forth, and that barrel 772, covered by entry 548, is included. The testimony refers to barrel 722 under that entry number. We therefore make a finding as to barrel 722. Plaintiff's claim having been abandoned except as to the barrels enumerated in said schedule A, it is hereby overruled as to that merchandise.

Judgment will be rendered in accordance with this decision. It is so ordered.