(C. D. 960)

ALLIANCE DISTRIBUTORS, INC. *v.* UNITED STATES

## United States Customs Court, Third Division

(Decided October 19, 1945)

*Barnes, Richardson & Colburn (J. Bradley Colburn* and *Joseph Schwartz* of counsel) for the plaintiff.

*Paul P. Rao,* Assistant Attorney General (*William J. Vitale,* special attorney), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

CLINE, Judge: This is a suit against the United States arising at the port of New York by protest against the collector's assessment of duty on whisky remaining in warehouse after January 1, 1936, at the rate of $5 per proof gallon under paragraph 802 of the Tariff Act of 1930, less 20 per centum under the provisions of the Cuban Trade Agreement, T. D. 47232, plus an internal revenue tax of $2 per gallon. Claim is made that duty should have been assessed at the rate of $2.50 per proof gallon under the trade agreement with Canada, T. D. 48033, less 20 per centum ad valorem under article III of the Cuban Trade Agreement, T. D. 47232.

The merchandise, consisting of whisky imported from Cuba, is covered by warehouse entries dated December 17 and 18, 1934. When the merchandise was withdrawn from warehouse is not clearly shown in the record. A storekeeper's report made pursuant to a permit dated January 30, 1936, states that 98 cases were then left in warehouse. The warehouse entries contain, respectively, the following notations in red ink: "Final wdrl 2/5/36"; "Final wdrl 5/21/37."

The Canadian Trade Agreement, T. D. 48033, which became effective January 1, 1936, contains the following provision:

| Tariff Act of 1930 paragraph | Description of article | Rate of duty |
|---|---|---|
| 802 | Whiskey of all types and classes. *Provided,* That this provision shall not apply to any whiskey consisting in whole or in part of distilled spirits which have not been aged in wooden containers at least four years prior to the date the whiskey is entered, or withdrawn from warehouse, for consumption. | $2.50 per proof gal. |

The two entries involved herein were originally liquidated on June 24 and June 26, 1935, prior to the date of the Canadian Trade Agreement. The plaintiff filed a protest claiming that duty was assessed on a quantity in excess of the actual quantity imported and also claiming that the merchandise was not subject to the internal revenue tax of $2 per gallon. On June 19, 1939 (subsequent to the effective date of the Canadian Trade Agreement), the protest was amended

by adding the claim that the merchandise was dutiable at $2.50 per proof gallon under said trade agreement. The case was tried upon the issue as to whether the whisky had been aged in wooden containers for 4 years. The protest was sustained by decision dated January 15, 1941 (*Alliance Distributors, Inc.* v. *United States*, protest 968224–G, 6 Cust. Ct. 512, Abstract 45219). On March 5, 1941, an order was made vacating the judgment and restoring the case to the docket. Thereafter, upon motion of the Government, an order was granted for the issuance of a commission to take the deposition of a witness in Cuba. When the case appeared again on the calendar, the Government moved to dismiss the amended protest on the ground that the claim in the original protest (filed August 23, 1935) did not contain a claim in regard to the Canadian Trade Agreement (effective January 1, 1936). Without prejudice to the motion, the Government then introduced into evidence the deposition taken in Cuba and the case was submitted. On December 1, 1942, prior to the filing of a brief by plaintiff, the collector reliquidated the entries at the original rate. The case was then abandoned by plaintiff and the present protest filed. The record in the previous case was incorporated into the record herein.

At the first trial, Charles Haim, a stockholder and director of Mill Creek Distillery from 1929 to 1937 and its president from 1931 to 1934, explained the method by which whisky is identified at the distillery. After the whisky is distilled, it is placed in barrels and marked with the date of distillation under the supervision of a Cuban official stationed at the plant. Mr. Haim had seen some of the barrels marked in 1929; he knew the part of the warehouse they were put into, and they were still there in 1934. At that time the distillery entered into a contract with Alliance Distributors, Inc., for the sale of 10,000 cases of whisky. Mr. Haim went to the warehouse and took out a sufficient number of the barrels marked 1929 to make up the 10,000 cases and supervised the bottling of the whisky. All of the whisky covered by the invoices herein was taken from that lot of 10,000 cases. Mr. Haim further testified that the distillery records as to manufacture were kept by the Cuban official at the plant; that his testimony was based upon the records of the Cuban Government and his own personal knowledge. He stated:

R. Q. Are you relying upon the records of the Cuban Government or upon your own knowledge?—A. Both.

R. Q. Will you wait till I finish the question, please?—A. I am sorry.

R. Q. In so far as you testified that you personally saw about 3000 barrels of 1929 whiskey in the warehouse? A. That is my personal knowledge, of course.

R. Q. And are you relying upon the records of the Cuban Government or upon your own knowledge in so far as your testimony that you personally supervised the filling of this order for Alliance Distributors out of that lot of 1929 whiskey?—A. That is my own personal knowledge.

Plaintiff also produced the witness Leo Wohl, a sales representative of William Jameson Co., who had been vice president in charge of sales of Alliance Distributors. He testified that he had been in the liquor business for 50 years except during the prohibition period. Whiskies were submitted to him for examination because of his experience in the business. He testified:

Q. Are you able to determine to your own satisfaction whether a whiskey which you sell is or is not over 4 years old?—A. Well, pretty near as far as the bouquet is concerned. As a matter of fact, may I say that I got to be satisfied in my own mind when I sell whiskey and I represent it as a certain age whiskey it must be pretty close on to what it is, not exactly the age, but on the body I am able to tell.

Q. Are you able to tell to your own satisfaction whether a whiskey is over 4 years of age?—A. Well, I can't exactly determine the age of it, but I am pretty sure I can tell 4 or 5-year-old whiskey.

Q. How do you tell 4 or 5-year-old whiskey?—A. Well, it has a certain bouquet, flavor and body; furthermore, if it is blended with spirits or if any strange stuff or any strange merchandise is in that, especially alcohol, you can determine it very quickly by just testing it.

Mr. Wohl had examined samples of almost all shipments imported by Alliance Distributors and gave the following opinion as to the age of the Mill Creek whisky:

Well, while I cannot determine the exact age, I would give my word as an expert, that is, on whiskey, having been called by other whiskey organizations in the city to give testimony as to the brand of whiskeys—not only this, but to give affidavits as to the value of whiskey—I can safely say that it must have been over 4 years.

Q. And by that do you mean that it was aged in the wood for over 4 years?—A. Yes, sir; whiskey doesn't age in glass.

On cross-examination, Mr. Wohl admitted that his opinion might be influenced by the fact that the Cuban Government issued a certificate as to the age of the whisky.

At a subsequent hearing there were admitted into evidence two so-called certificates of origin and age apparently issued by the Cuban Government, together with translations thereof. These certificates are on stationery headed "Republica de Cuba"—"Secretaria de Hacienda." They state that the shipments of whisky here involved had been aged in the wood for 5 years and are signed by the president of Mill Creek Distillery, Ltd., an inspector at the factory, and an officer of the Treasury, Havana, Cuba. They are dated the 13th and the 15th of December 1934, respectively.

Thereafter, a commission was issued to take the deposition of Octavio Masses Valera, who had been Director General of the Bureau of Rents and Taxes of the Ministry of the Treasury in Cuba from December 1932 to August 1933 and again from March 1940. He testified that the term "Secretaria de Hacienda" means "Secretary of the Treasury"; that the functions of the Ministry of the Treasury

consist of the fiscalization and control of the economic part of the country; that his duties covered the fiscalization of the taxes of that Department. In response to a question as to whether officials of the Department were authorized to sign so-called age certificates for whisky during the month of December 1934, he stated:

Before the first of December 1934 nobody was authorized to sign these or analogous certificates. After this date, feeling the necessity of these certificates in order to export our products to foreign markets, on the 18th of May, 1937, decree No. 1472 appointed an auditor or delegate, authorized to sign these certificates. After that, on December 13, 1940, a decree-regulation that regulates these certificates was promulgated.

He further stated that on August 12, 1933, he resigned from the Department, left for the United States, and had no contact with the Department in the meanwhile. He was shown the so-called age certificates in the instant case and stated that he could not read the signatures of the persons signing as officials; that there was no such title as "oficial de la Secretaría de Hacienda"; that they had no file numbers nor official seals such as were always placed on official documents; that the documents appeared to be false.

The Government contends that the protest is invalid on the ground that it refers to "the whiskey remaining in warehouse after January 1, 1936" and that there is no provision in the tariff act or the Canadian Trade Agreement which provides for duty on whisky *remaining* in warehouse. While the wording of the protest may be *inartistic*, it is clear that the claim refers to whisky withdrawn from warehouse after January 1, 1936. The protest, reasonably construed, distinctly and specifically sets forth the merchandise involved and the reasons for the importer's objection to the liquidation. Therefore it meets the test of sufficiency. *Raybestos Manhattan, Inc.* v. *United States*, 27 C. C. P. A. 340, C. A. D. 109.

If the Government's claim is that protest cannot be made until the merchandise is withdrawn from warehouse because the rate of duty might be changed, it is untenable. Protests must be filed within 60 days of liquidation even though the goods remain in warehouse. Otherwise the importer loses his right to protest unless there is a change in the law or facts at the time when the goods are withdrawn from warehouse. *Scherk Importing Co.* v. *United States*, 17 C. C. P. A. 135, T. D. 43470; *Hiram Walker & Sons, Inc.* v. *United States*, 25 C. C. P. A. 189, T. D. 49293. Only in cases where a different state of facts exists or a change of law occurs between the time of the original liquidation and the time of withdrawal may the importer protest within 60 days after withdrawal although more than 60 days after liquidation. *Taylor* v. *United States*, 11 Ct. Cust. Appls. 15, T. D. 38636; *Matson Navigation Co.* v. *United States*, 14 Cust. Ct. 110, C. D. 921. The importer is not required to take the risk that there will be

a change in law or facts at the time of withdrawal. In the instant case, although no definite dates of withdrawal have been established, it appears that the merchandise was all withdrawn prior to the date of reliquidation and the protest was filed within 60 days thereafter.

The only remaining question is whether plaintiff has established as a matter of fact that the whisky had been aged in wooden containers for 4 years. There have been submitted the two certificates above described, stating that the whisky was aged in wooden containers for 5 years. Attempt was made to dispute the authenticity of these documents by the testimony contained in the deposition of Octavio Masses Valera. He testified therein, however, that he was not connected with the Cuban Treasury Department at the time when the certificates were issued; that more than a year before that time he had resigned his official position with the Cuban Government and had left for the United States, and that he did not resume his official connection with the Cuban Government until the year 1940. The record is silent as to the source of his knowledge as to whether or not anyone was authorized to sign the certificates in question or analogous certificates. He refers to decree No. 1472, dated May 18, 1937, as appointing an auditor or delegate authorized to sign these certificates but again the record is silent as to the source of his knowledge regarding this decree. We feel, therefore, that this evidence falls short of disproving the authenticity of the certificates in evidence.

Moreover, we are of opinion that there is other evidence sufficient to establish that the whisky was aged in wooden containers for 4 years. The testimony of Mr. Haim establishes that the whisky was placed in barrels in 1929; that the barrels were marked with the date of distillation in the presence of a Cuban official; that the whisky was taken out of the barrels and bottled in 1934, more than 4 years later. Although Mr. Haim was not present when all of the barrels were marked with the date, there is no evidence that any incorrect dates were placed thereon. The testimony of Mr. Wohl is some corroboration that the whisky was over 4 years old. His opinion was based upon the taste, smell, and strength of the whisky after years of experience in dealing with liquors. There is no contradictory evidence in the record.

In *Oldetyme Distillers, Inc.* v. *United States*, 2 Cust. Ct. 487, C. D. 184, whisky from the same manufacturer, Mill Creek Distillery, was involved and testimony similar to the above was introduced. The evidence was held sufficient to establish the age of the whisky.

We hold, therefore, that the whisky herein was aged in wooden containers for 4 years and that the portion withdrawn from warehouse subsequent to January 1, 1936, is properly dutiable at $2.50 per proof gallon under paragraph 802 of the Tariff Act of 1930, as amended by the Canadian Trade Agreement, T. D. 48033, less 20 per centum re-

·duction as a product of Cuba, under the Cuban Trade Agreement, T. D. 47232. Judgment will be entered accordingly, sustaining the protest.