(C. D. 888)

GEO. WM. RUEFF, INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided November 3, 1944)

*Tompkins & Tompkins (Allerton deC. Tompkins* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*William J. Vitale*, special attorney), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

KEEFE, Judge: This case was submitted upon an agreed statement of facts reading as follows:

(1) Geo. Wm. Rueff, Inc., customhouse broker and agent for Cuba Rum, Inc., of Tampa, Florida, filed Warehouse Entry No. 735 on March 14, 1934 with the New Orleans Collector of Customs for 27 casks of rum, numbered 1/27, imported from Cuba on the S. S. *Metapan* on March 5, 1934.

The 27 casks of rum were gauged by the customs gauger on March 19, 1934 and were found to contain 4955 gallons.

All casks were transferred under customs supervision on March 21, 1934 to the Commercial Terminal Warehouse in New Orleans, at which time they were all found to be in bad condition with staves broken or contents leaking. Geo. Wm. Rueff, Inc., had all casks recoopered in the warehouse on March 23, 1934.

· The warehouse entry was liquidated on April 17, 1934 for 5094.9 gallons at $5.00 per proof gallon less 20% reduction as a product of Cuba. The increase of 139.9 gallons over the landed gauge was due to excessive outage in cask 21 which was not allowed.

From March 21, 1934 to August 20, 1938, Geo. Wm. Rueff, Inc., withdrew from casks 1, 3, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 21, 22, 23, 24, 25, 26 & 27 for consumption, samples amounting to 4.375 gallons on which duty has not been paid.

From May 31, 1934 to January 15, 1935, Geo. Wm. Rueff, Inc., manipulated under Section 562 of the Tariff Act of 1930, casks 2, 4, 5, 6, 19, & 20, by transferring contents into one gallon glass containers. The liquidated gauge for the 6 casks was 999.5 gallons. The quantity found after manipulation was 976.8 gallons. The loss of 22.7 gallons was not as a result of the manipulation but was due to leakage which occurred in warehouse prior to manipulation. Duty was assessed on this quantity lost through leakage, on 14.2 gallons of which duty has not been paid. From May 31, 1934 to March 4, 1939 withdrawals for consumption were made for 972.3 gallons. The balance of 4.5 gallons contained in 5 one gallon glass containers was later subject to destruction.

On March 4, 1939, Geo. Wm. Rueff, Inc., destroyed casks 1, 3, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 21, 22, 23, 24, 25, 26, and 27 and 5 one gallon glass containers. The liquidated gauge for the 21 casks was 4095.4 gallons, and the 5 one gallon glass containers originally contained 4.5 gallons. The gauge at time of destruction showed 3104.5 gallons remaining in the 21 casks, and the 5 gallon glass containers to be empty. This quantity was destroyed under customs supervision by dumping in the sewer. The difference between the liquidated gallonage and the gallonage at time of destruction was 995.4, of which 4.375 gallons were withdrawn as samples as noted above. The balance of 991.025 gallons was a loss in warehouse due to leakage prior to destruction on which duty was assessed and has not been paid.

· On March 10, 1939 the New Orleans Collector made a demand on Geo. Wm. Rueff, Inc., to pay duties on 1009.6 gallons at $5.00 per proof gallon less 20% reduction as a product of Cuba, amounting to $4,038.40, which was due as follows:

| | | |
|---|---|---|
| 4.375 | gallons withdrawn as samples | $17. 50 |
| 14.2 | gallons loss before manipulation | 56. 80 |
| 991.025 | gallons loss before destruction | 3, 964. 10 |
| 1,009.6 | | $4, 038. 40 |

The difference between 1018.1 gallons referred to in the protest and the quantity of 1009.6 gallons referred to above amounts to 8.5 gallons on which duty had been paid and which was not included in the demand made for payment of duties by the Collector amounting to $4,038.40.

This protest as filed May 8, 1939 is directed against the Collector's demand or exaction as made March 10, 1939.

(2) That the rights to any further docket call or to amend the above-named protest are hereby waived.

(3) That the protest is submitted upon this stipulation.

It is apparent from the facts agreed upon that when the 27 casks were entered for warehouse they contained 4,955 gallons of rum, although the entry was liquidated April 17, 1934, on the basis of 5,094.9 gallons because of an increase of 139.9 gallons due to an ex-

cessive outage in cask numbered 21. The stipulated facts fail to indicate whether or not the 139.9 gallons are included in the claims before us.

The agreed facts disclose that six of the casks numbered 2, 4–6, 19, and 20 were manipulated under section 562, from time to time between May 31, 1934, and January 15, 1935, by transferring the contents of said casks to 1-gallon glass containers. The liquidated gauge of the 6 casks was 999.5 gallons. The quantity in the glass containers, however, was only 976.8 gallons, 22.7 gallons having admittedly been lost through leakage prior to manipulation. In that connection it also appears that duty has not been paid on 14.2 gallons out of said 22.7 gallons. Said 976.8 gallons of rum were disposed of as follows: 972.3 gallons were withdrawn for consumption up to March 4, 1938, and 5 one-gallon containers originally containing 4.5 gallons of rum were destroyed under customs supervision. However it appears that the 5 one-gallon containers were actually empty at the time of destruction, the 4.5 gallons of rum originally placed therein having disappeared.

The disposition of the remaining 21 casks was accomplished through destruction under customs supervision; to wit, casks numbered 1, 3, 7–18, and 21–27. The liquidated gauge of these 21 casks was 4,095.4 gallons but when destroyed the gauge was only 3,104.5 gallons, a difference of 990.9 gallons. However, 4.375 gallons had been previously withdrawn from said casks as samples for consumption, leaving 986.525 gallons claimed to have been lost in warehouse because of leakage. Apparently this 986.525 gallons also includes the 139.9 gallons upon which duty was assessed in cask numbered 21 because of excessive outage, leaving 846.625 gallons of rum actually lost. The duty on the 4.375 gallons has never been paid, although the withdrawals were made from March 21, 1934, to August 20, 1938. On March 10, 1939, the collector made a demand on the plaintiff for payment of duties on 1,009.6 gallons of rum, which the plaintiff claims is upon goods constituting a nonimportation.

A consideration of the record before us discloses that the actual loss from the 21 casks was 846.625 gallons of rum and from the 5 one-gallon containers taken from the remaining 6 casks was 4.5 gallons. These quantities together with 139.9 gallons excessive outage equal 991.025 gallons. To properly show the circumstances attending the collector's demand for payment of duties upon all of the 1,009.6 gallons, and our reasons for holding as we do it is necessary to separate the quantities lost before destruction in a manner different from that set out in the foregoing statement of facts, to wit:

4.375 gallons withdrawn as samples upon which duty was not paid.
14.2 gallons lost before manipulation of the 6 casks upon which duties were not paid.

4.5    gallons which were not found in the 6 one-gallon containers destroyed under customs supervision.

139.9    gallons excessive outage in cask numbered 21 at time of importation upon which duty was not paid.

846.625  gallons lost from the 21 casks before destruction under customs supervision.

---

1,009.600  gallons total.

Considering each of the foregoing subdivisions separately, we find that the 4.375 gallons, withdrawn as samples from the 21 casks, are subject to duty as of the liquidation of April 17, 1934. No facts or circumstances arising since that time have altered the same so as to allow the filing of a protest. The collector's liquidation became final and conclusive as to such quantity of rum before this instant protest was filed. Therefore the claim insofar as it refers to said 4.375 gallons, will not be considered.

As to the six casks manipulated under section 562 by transferring 976.8 gallons to 1-gallon containers, said casks contained 22.7 gallons more rum at the time of entry than were found at the time of manipulation. Duty was paid upon 8½ gallons thereof but not upon the 14.2 gallons included as a part of the collector's demand. Inasmuch as the duty upon the missing 14.2 gallons of rum became final and conclusive long before the protest here was filed, the collector's present demand for payment of duties previously assessed on warehoused goods could not be considered an exaction against which a protest may be filed in accordance with section 514, act of 1930. See *United States* v. *Andrews*, 14 Ct. Cust. Appls. 62, T. D. 41576. The claim as to said 14.2 gallons of rum therefore will not be considered as a part of this action.

The 4.5 gallons of rum contained in 5 one-gallon containers at the time of manipulation of the foregoing 6 casks appears to have disappeared from said containers before abandonment. Clearly an empty package is no more the subject of abandonment than an empty cask is the subject of duty upon its contents at the time of importation. The collector's liquidation, therefore, is final and conclusive as to said 4.5 gallons of rum and the claim that duty was illegally assessed thereon will not be here considered for the reason that the protest was not filed within the prescribed time.

Although the 1,009.6 gallons of rum upon which the collector demanded that duty be paid included 139.9 gallons which was an excessive outage in cask 21, decided to be a part of the dutiable quantity at the time of original entry, it is included in this protest and claimed to be an illegal exaction. As to such item the protest is clearly untimely.

The remaining question is whether or not duty is assessable upon 846.625 gallons of rum claimed to have been lost in warehouse because

of leakage from the foregoing numbered 21 casks which were destroyed under customs supervision.

Our appellate court, in *United States* v. *Lowenthal*, 31 C. C. P. A. 19, C. A. D. 244, points out that paragraph 813 forbids any allowance for breakage, leakage, or damage except under the conditions set forth therein. It also stresses that section 563 specifies the circumstances under which an allowance may be granted upon goods in warehouse. As to the bearing these sections have upon allowances for loss of liquors, the court stated:

As far as paragraph 813, *supra*, is concerned it is very plain that no allowance, constructive or otherwise, shall be made for breakage, leakage, or damage on liquors unless the container thereof has been broken or injured in transit from a foreign port and that because of such breaking or injury the liquor amounting to 10 per centum or more of the total value of the cask or package has been lost. This is a plain statutory prohibition forbidding any allowance for loss of liquor except under the conditions set forth in that paragraph.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

Section 563 provides for allowance for loss and abandonment of warehouse goods. Under subdivision (a) thereof no merchandise which has suffered by reason of injury, deterioration, loss or damage in customs custody shall receive the benefit of any abatement or allowance in duties unless such loss or injury comes within specifically defined exceptions, among which appears "*actual injury or destruction, in whole or in part, of any merchandise by accidental fire or other casualty, while in bonded warehouse.*" [Italics quoted.]

Certainly under the provision of subdivision (a) of section 563, *supra*, taken by itself, there can be no recovery by appellant, nor has he sought to recover under that statute.

*If the judgment appealed from is to be sustained it must be because the provisions of section 562, supra, carve an exception from or modify paragraph 813 and section 563.* [Italics not quoted.]

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

&ast; &ast; &ast;. However, should it be held that an importer of intoxicating liquor may secure an abatement or refund of duties under that section due to loss of liquor while in bonded warehouse, it would in all such cases completely nullify paragraph 813, which may not be done. The same nullification would apply to section 563 (a), *supra*, in all such cases.

In view of the foregoing decision, particularly the statement of the court therein that if an abatement in duties should be allowed for loss or evaporation in case of merchandise repacked under section 562, it would completely nullify paragraph 813, and section 563, we are of the opinion that said decision is controlling in the situation here presented where under subdivision (b) of section 563 goods in bonded warehouse are permitted to be abandoned to the Government, and authority is given *for the remission of any duties on such merchandise,* it being specially provided as follows:

&ast; &ast; &ast; but any merchandise so abandoned shall not be less than an entire package and shall be abandoned in the original package without having been repacked while in a bonded warehouse (other than a bonded manipulating warehouse).

170

In view of our appellate court's decision that a grant of allowance for loss of liquor originally contained in a cask which was later repacked under section 562 would nullify paragraph 813 and section 563, clearly such an allowance in duties for liquor found not to be contained in its original package at the time of abandonment would also have the same effect. Even though provision is made that no less than an entire package may be abandoned, such language would not authorize the remission or refund of duties upon merchandise not contained therein at the time of abandonment as there must be a specified quantity capable of being abandoned before the abandonment thereof may be accomplished, particularly in view of the appellate court's ruling in the *Lowenthal* case, *supra*. We hold, therefore, that duty was properly assessable upon the 846.625 gallons of rum in accordance with the entered gauge.

For the reasons stated, judgment will be entered in favor of the Government.