(C. D. 1118)

Louis T. Snow & Co. *v.* United States

United States Customs Court, Third Division

(Decided June 23, 1948)

*Benjamin A. Levett; Lawrence & Tuttle* (*George R. Tuttle* and *Chas. J. Evans* of counsel) for the plaintiff.

*Paul P. Rao,* Assistant Attorney General (*Joseph A. Howard, Jr.,* and *Joseph E. Weil*), for the defendant.

Before Cline, Ekwall, and Johnson, Judges

Johnson, Judge: The merchandise involved in this case consists of 300 cases of Scotch whisky imported from Scotland, each package containing, when exported, twelve ⅘-quart bottles. The collector levied a duty of $2.50 per proof gallon under paragraph 802 of the Tariff Act of 1930, as amended by the trade agreement with Canada, T. D. 48033. He also levied an internal revenue tax of $2 per proof gallon under Title 26, U. S. Code, Chapter 18, § 1150 (a) (1), 1934

ed. As a basis of the tax and duty the collector made his levies upon 728.4 proof gallons, the exported quantity. Duty was also assessed upon 4,725 pounds of glass bottles at ⅛ cent per pound under paragraph 217, by virtue of paragraph 810, and a countervailing duty at the rate of 9.76 cents per case.

Protest was filed against the collector's levies of duty and taxes of $2.50 and $2 per proof gallon, and ⅛ cent per pound, claiming said rates should have been based upon the actual quantities withdrawn from warehouse, inasmuch as the goods were repacked under the provisions of section 562. Further claim is made that 49 cases of liquor never arrived in the United States, never entered into the commerce of the country, and therefore no duties nor taxes should have been assessed upon such nonimported items.

At the trial counsel for the plaintiff and the Government agreed that the following were the facts:

MR. TUTTLE: * * * I would like to stipulate with Government counsel that the 300 cases of whiskey described in Warehouse Entry 1761 arrived in New York from Scotland January 6, 1936; that this merchandise was then transshipped to San Francisco under I. T. Entry 17992, the carrier being the Dollar Steamship Line, the vessel the President Polk, that when the goods were laden on the President Polk on January 9, 1936, the loading inspector reported, as shown by the I. T. manifest which is part of the file in this case, that the goods were "in apparent good order except as noted" and that there are no notations on the I. T. manifest stating any exceptions.

Thereafter, when the goods arrived in San Francisco on January 23, or January 25—the file isn't clear in that respect—1936, the discharging inspector found, as shown by his notation on the reverse side of the permit in Warehouse Entry 1761, signed by Inspector W. J. Williams, that "297 cases stained and leaking"; that thereafter three of the original 300 cases were ordered to the Appraiser's Stores for the purpose of examination, and that the remaining 297 were transferred by bonded drayman to Continental Bonded Warehouse in San Francisco; that subsequently Arthur J. Fritz, customs broker for Louis T. Snow & Co., the importer here, filed the affidavits with the San Francisco collector of customs as required by paragraph 813 of the Tariff Act of 1930 and Article 817, Customs Regulations of 1931, claiming allowance under paragraph 813 for loss or damage in transit, and that such affidavits were filed within the time provided for by the regulations, the pertinent regulations.

That fact, Your Honor, so that the record will be clear, is shown, although the affidavits are not available—they cannot be located—the fact that they were filed is shown by a letter from the Commissioner of Customs which is in the possession of the collector here.

That Arthur Fritz also filed several applications, * * * on Customs Form 3499, requesting permission to do certain things as stated in the applications * * * and that the merchandise was thereupon repacked under supervision of a customs storekeeper, with the result that Storekeeper A. C. Albrecht, who is now deceased, found 248 cases were full.

That Storekeeper Albrecht found that there were 118 cases full but that the strip stamps on the bottles and the labels had been torn; that there were 130 cases full and in good condition; that the three cases which originally had been sent to the Appraiser's Stores for examination were in good order; that there were

48 empty cases, and by that I think we are in agreement that the word "empty" means there was nothing in the bottles. The cases were filled with bottles but the liquor was gone. And that there was one case with 8 empty bottles, 2 broken bottles, and 2 short bottles.

Those are all the facts that I think we are in agreement upon in this matter. Is that correct?

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

MR. HOWARD: Upon the advice of Mr. O'Donnell, the clerk in charge of the Warehouse Division, the Government agrees to the facts as Mr. Tuttle has stated. [Record, pages 1–5, inclusive.]

One Arthur J. Fritz, broker for the importer, testified that he personally handled all of the details pertaining to the entry; delivery, and release of the 300 cases of whisky. In effecting the release, he filed four applications on customs Form 3499. The first, third, and fourth were admitted in evidence as exhibits 1 to 3, respectively.

The witness further testified that the foregoing exhibits were filed for the following reasons: The first application, filed January 30, 1936, was made in order to obtain permission to open the cases, recondition the contents, and repack into full cases and full bottles. Before the collector, who was represented by Clem Perkins, since retired, would grant the first application, he imposed the condition that "duty on the empty cases was to be paid as soon as determined." The second application, filed January 31, 1936, was for the purpose of obtaining permission to take 2 bottles of whisky out of warehouse. The third application, dated April 16, 1936, requested permission to replace the corks and labels on the bottles, which had been damaged by the leaking of other cases, with new labels and corks, for the purpose of restoring the bottles to their original appearance. The fourth application, filed April 21, 1936, was for permission to attach the internal revenue strip stamps over the neck of each bottle where such stamps were removed during repacking. According to the witness, he had applied for permission to repack the whisky under the provisions of section 562 because he noted that it was leaking profusely from the cases at the time of their arrival and discharge from the vessel.

Fritz was the only witness testifying on behalf of the plaintiff. The Government did not offer any rebuttal testimony. Agreement was made, however, between counsel for both sides that the statements of Storekeeper Albrecht, since deceased, appearing on the reverse side of exhibits 1, 2, and 3, be included as a part of the evidence.

Storekeeper Albrecht reported on exhibit 1 as follows: On February 1, 1936, a repacking from case to case was completed, the empty bottles being segregated from the full ones. After repacking there were 248 full cases, and 2 full bottles, 1 case containing 10 empty

bottles, and 48 cases each containing 12 empty bottles. All of the strip stamps that were broken and torn were left in the cases containing the empty bottles. The 2 full bottles above referred to were delivered to the importer on sample permit dated January 31, 1936.

Storekeeper Albrecht reported on exhibit 2 as follows: On April 23, 1936, reconditioning was completed, 121 cases being recapped, relabeled, recorked, re-strip stamped. Five bottles were found empty, the contents having leaked out since last reconditioning on February 1, 1936, and 2 bottles were broken while recorking and the contents thereof lost. "Net result, 120 cases OK; 1 case, 5 bottles OK, 5 empty, 2 broken, 121 cases total."

On the back of exhibit 3, Storekeeper Albrecht reported that the strip stamps attached to the bottles before importation were destroyed in the course of reconditioning and new ones were attached on 121 cases of 12 bottles each.

Agreement was later entered into between counsel for both sides that there be admitted in evidence an affidavit executed on February 3, 1936, by Thelma Stevenson, as attorney-in-fact for Arthur J. Fritz & Co. The agreement and affidavit were admitted in evidence as collective exhibit 5. Said affidavit set out the condition of each package showing a loss in excess of 10 per centum or more of the total value of the contents, and indicated that such condition prevailed at the time of arrival at the port of San Francisco before delivery to the bonded warehouse. Specifically it disclosed that instead of the cases containing 12 full bottles of liquor, in 60 cases, 2 bottles were empty; 16 cases, 3 were empty; 17 cases, 4 were empty; 6 cases, 5 were empty; 8 cases, 6 were empty; 7 cases, 7 were empty; 7 cases, 8 were empty; 3 cases, 9 were empty; 6 cases, 10 were empty; and 4 cases, 11 were empty. In 3 cases, numbered 17329, 17210, and 17268, all of the bottles were empty, and in 1 case numbered 17537, 1 bottle was empty and 1 was broken. Out of the 138 cases reported in importer's affidavit, therefore, 588 bottles were empty, including the 1 broken bottle. In 49 cases there would be contained a total of 588 bottles. This is in substantial agreement with the storekeeper's report of the contents of the cases after repacking, under section 562, of 248 full cases and 1 case containing 10 empty bottles and 2 full bottles, and 48 cases containing bottles entirely empty, a total of 586 empty or broken bottles. Three cases, not reported by him, had been sent to the appraiser's stores rather than to warehouse.

Counsel for the plaintiff stresses the fact that although the loss occurred after the merchandise had been landed originally in the United States, it had not arrived at its port of destination and consequently was still "in transit from a foreign port." As the affidavit

of the importer, verifying the report of the storekeeper-gauger of the warehouse at San Francisco, was filed within the time prescribed by law, counsel for the plaintiff contends that the terms announced in paragraph 813, under which relief may be granted, have been fully complied with, citing and relying on *United States* v. *Somerset Importers, Ltd.*, 33 C. C. P. A. 138, C. A. D. 328, as controlling the issues herein.

Counsel for the plaintiff further points out that application was made and granted to repack the whisky under the provisions of section 562, wherein it is provided that such repacked merchandise may thereafter be withdrawn for consumption upon payment of the duties accruing thereon in its condition and quantity at the time of withdrawal from warehouse. For the reason that the same quantity of whisky was actually repacked and withdrawn from warehouse as was delivered thereto upon arrival of the shipment in San Francisco, and the condition thereof was the same except that the bottles containing the whisky were fitted with new corks, labels, and strip stamps to replace the damaged stamps, and said bottles were repacked so as to form full cases, plaintiff's counsel further contends that the only whisky that is subject to an assessment of duty and internal revenue tax is the quantity so withdrawn from warehouse, rather than the entered quantity, and therefore neither a duty nor a tax should have been exacted upon the empty cases resulting from such repacking.

The Government did not offer any evidence nor file a brief in this case, presumably resting upon the presumption of correctness of the collector's action in assessing and collecting customs duties and internal revenue taxes.

The claim concerning the duty assessed upon empty bottles was not pressed at the trial. Therefore, only two questions are presented for the court's consideration; one, whether or not the collector was justified under the law in collecting duty upon the quantity of whisky exported, making no allowance for any shortage in the landed quantity; and two, whether an internal revenue tax legally could be levied upon whisky not entering consumption in the United States.

Paragraph 813 of the Tariff Act of 1930 (Title 19, U. S. Code, §1001, page 849, 1934 ed.) provides as follows:

PAR. 813. *There shall be no constructive or other allowance for* breakage, leakage, or damage on wines, liquors, cordials, or distilled spirits, *except* that when it shall appear to the collector of customs from the gauger's return, verified by an affidavit by the importer to be filed within five days after the delivery of the merchandise, *that a cask or package has been broken or otherwise injured in transit from a foreign port and as a result thereof a part of its contents*, amounting to 10 per centum or more of the total value of the contents of the said cask or package in its condition as exported, *has been lost, allowance therefor may be made in the liquidation of the duties.* [Italics not quoted.]

Section 562 of the Tariff Act of 1930 (Title 19, U. S. Code, §1562, page 896, 1934 ed.) provides as follows:

SEC. 562. MANIPULATION IN WAREHOUSE.

Unless by special authority of the Secretary of the Treasury, no merchandise shall be withdrawn from bonded warehouse in less quantity than an entire bale, cask, box, or other package; or, if in bulk, in the entire quantity imported or in a quantity not less than one ton weight. All merchandise so withdrawn shall be withdrawn in the original packages in which imported unless, upon the application of the importer, it appears to the collector that it is necessary to the safety or preservation of the merchandise to repack or transfer the same: *Provided,* That upon permission therefor being granted by the Secretary of the Treasury, and under customs supervision, at the expense of the proprietor, merchandise may be cleaned, sorted, repacked, or otherwise changed in condition, but not manufactured, in bonded warehouses established for that purpose and be withdrawn therefrom for exportation to a foreign country or for shipment to the Virgin Islands, American Samoa, or the island of Guam, without payment of the duties, or for consumption, upon payment of the duties accruing thereon, in its condition and quantity, and at its weight, at the time of withdrawal from warehouse, with such additions to or deductions from the final appraised value as may be necessary by reason of change in condition. * * *

The facts appearing upon the face of the entry papers, including exhibits 1, 2, 3, and collective exhibit 5, establish that on January 31, 1936, the discharging inspector reported 297 cases stained and leaking. He made no detailed report. The 300 cases of whisky were entered for warehousing, 3 cases thereof being sent to the appraiser's stores. No detailed report was made at the warehouse of any injury to a cask or package resulting in the loss of a part of the contents. The only reports appearing of record are such as were filed by Storekeeper Albrecht on the back of the applications to repack. The report made on exhibit 1 was that of repacking the whisky from case to case, segregating the empty bottles from the full, which was completed February 1, 1936, the report showing 248 full cases, 1 case with 10 empty bottles and 2 full bottles, and 48 cases each containing 12 empty bottles. Such report, although not within the terms prescribed in paragraph 813, does agree substantially, as heretofore stated, with the total shortage of whisky from the bottles shown in the affidavit, collective exhibit 5, which was dated February 3, 1936, and agreed between counsel to have been filed timely with the collector.

Article 817 of the Customs Regulations of 1931, respecting the construction of the term in paragraph 813 reading "broken or otherwise injured," provides as follows:

ART. 817. DEFINITIONS—OUTAGES.

*     *     *     *     *     *     *

(c) The use of the term "broken or otherwise injured" precludes an allowance for loss resulting from ordinary leakage. * * *

*     *     *     *     *     *     *

(e) Outages not within the scope of the preceding sub-divisions of this article by reason of being under 10 per cent or not being the kind of loss provided in the

law, or by failure to file timely affidavit, will be subject to an allowance of 2½ per cent for normal outage from the capacity as shown by the gauger's return or the invoice quantity, according to the circumstances.

Evidence is entirely lacking in the case at bar why the 297 cases contained sufficient empty bottles to repack 48 cases. There is nothing tending to indicate that the loss was occasioned by reason of a cask or package being broken or otherwise injured in transit from a foreign port. Nor was there any report of a cask or package or the bottles therein being broken in transit. According to the record, the only breakage occurred after the repacking in warehouse was completed. A notation made by Inspector Williams that the Dollar Steamship Line reported that the staining of the cases by contents was due to improper corking of bottles and loss of part of contents, without any substantiating evidence of such statement, is without any evidentiary value. It is this court's opinion, however, that even though the evidence disclosed that the bottles were improperly corked, resulting in the loss of contents, that such loss is not an injury within the terms of the statute. Paragraph 813, *supra*, prohibits any allowance for loss except in certain circumstances. The exception so granted by Congress is a privilege extended to importers of liquors, and as a privilege it must be strictly construed against the importer and in favor of the grantor. See *Swan & Finch Co.* v. *United States*, 190 U. S. 143; *Hannibal* v. *Packet Co.*, 125 U. S. 260. A consideration of the *Somerset* case, *supra*, relied upon by the plaintiff, discloses that the leakage of the liquors in that case was caused by a breakage of the packages in transit resulting in the loss of the contents. That case, therefore, is not applicable to the situation here before us.

As to plaintiff's contention that merchandise repacked under the provisions of section 562 is dutiable upon the quantity withdrawn from warehouse, the United States Court of Customs and Patent Appeals in the case of *United States* v. *Siegfried Lowenthal Co.*, 31 C. C. P. A. 19, C. A. D. 244, stated that "in construing section 562 we must do so in the light of the provisions of paragraph 813" and concluded that—

* * * There is no express modification of paragraph 813 * * * by section 562. Neither, in our opinion, is there any modification thereof by implication. There is nothing in the legislative history of section 562, *supra*, which would warrant a different conclusion. Furthermore, paragraph 813 is a provision directed specifically to intoxicating liquor and it would be repugnant to rules of statutory construction to hold that general provisions such as appear in section 562 overrule, modify, or repeal the specific provisions of the paragraph.

Any advantage, therefore, in the dutiable status of alcoholic liquors, not granted under the provisions of paragraph 813, *supra*, that the importer might seek to gain from repacking the liquors under the provisions of section 562 would be looked upon with disfavor by the courts. Moreover, if the loss is not within the terms of any allowance

specifically granted by Congress in paragraph 813, a return of duties may not be effected by reason of the application of section 562. In *Dixie Bottle & Beverage Co.* v. *United States*, 18 Cust. Ct. 139, Abstract 51505, this court held that the importer was not entitled to any refund of duties upon liquors in warehouse where losses were discovered at the time the goods were manipulated under section 562.

On the other hand, the plaintiff's contention, that the internal revenue tax of $2 per gallon, exacted on the empty bottles is not legally collected, is well-taken. Title 26, § 1150, U. S. Code, relative to the internal revenue tax upon distilled spirits, provides:

SECTION 1150. TAX—(a) RATE—(1) DISTILLED SPIRITS GENERALLY.

On and after January 12, 1934, there shall be levied and collected on all distilled spirits produced in or imported into the United States an internal revenue tax at the rate of $2.00 on each proof gallon or wine gallon when below proof and a proportionate tax at a like rate on all fractional parts of such proof or wine gallon; to be paid by the distiller or importer when withdrawn from bond.

In *Paul Gelpi & Sons, Inc.* v. *United States*, 4 Cust. Ct. 373, Abstract 43072, this court held that an internal revenue tax was illegally collected upon an importation of Cuban rum insofar as such tax was levied upon 95 demijohns, the contents of which were lost. The court further pointed out that under the internal revenue law, taxes are imposed upon liquors in bond, whether imported or domestic, upon the basis of the quantity shown by the gauge at the time they are withdrawn for consumption.

In the case of *Fritz* v. *United States*, 73 Treas. Dec. 1045, T. D. 49637, the collector had assessed internal revenue taxes on the basis of the entered gauge rather than upon the regauge taken before withdrawal from the customs bonded warehouse. The court there held that the collector had acted contrary to the provisions of the United States Code, *supra*, and that where there was a regauge of liquors before withdrawal the collector should compute the internal revenue tax upon the basis of the quantity withdrawn rather than upon the entered quantity.

For the foregoing reasons judgment will be entered in favor of the plaintiff as to its claim that internal revenue taxes were illegally exacted upon the basis of 728.4 proof gallons of whisky, the exported quantity, rather than upon the quantity withdrawn from warehouse. In all other respects the protest is overruled.