(C. D. 1601)

SPATOLA WINES, INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided March 25, 1954)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff.
*Warren E. Burger*, Assistant Attorney General (*Alfred A. Taylor, Jr.*, trial attorney), for the defendant.

Before EKWALL and JOHNSON, Judges

EKWALL, Judge: The merchandise involved in this case consists of 2,000 cases or rum entered for warehouse at the port of Philadelphia

on March 20, 1944. Thereafter, some of the merchandise was withdrawn from time to time for consumption, some was transported in bond to Los Angeles, some was abandoned, and some found broken or missing.

The protest herein, filed on January 23, 1952, states that it is made against the collector's decision of January 9, 1952, "declining to ascertain, fix and make a final liquidation of the rates and amounts of duties and taxes to be paid and give proper notice of such liquidation in the form and manner prescribed by the Secretary of the Treasury in Section 505, Tariff Act of 1930, * * * in accordance with our demand of December 5, 1951." The demand referred to states that a purported liquidation had been made on September 8, 1944, but that it was not accepted by the collector as a final ascertainment of the amounts to be paid on the merchandise and that various subsequent charges and assessments were made, resulting in a total amount of duties and taxes different from that of the purported liquidation.

The plaintiff claims, therefore, that the purported liquidation of September 8, 1944, is not the kind or type of liquidation required by section 505; that there has been no legal liquidation of this entry; and that the collector has refused to make such a liquidation.

The Government contends that the liquidation of September 8, 1944, is legal and has moved to dismiss the protest on the ground that it is untimely.

The facts, as they appear from the official papers and the testimony of Maurice Gilbert, deputy collector in charge of the warehouse division at the port of Philadelphia, may be summarized as follows:

Two thousand cases of rum were entered for warehouse at Philadelphia on March 20, 1944. A report of short delivery, dated April 3, 1944, states that 337 bottles in the shipment were broken and 54 were missing.

Between April 4, 1944, and May 2, 1944, 1,000 cases were withdrawn for consumption and duties and internal revenue taxes were paid thereon. About May 12, 1944, 600 cases were withdrawn for transportation in bond to Los Angeles. Upon arrival, 63 bottles were found broken. On June 7, 1944, an application was filed and permission granted to repack the remaining 400 cases. This operation resulted in 348 full cases and 52 empty ones. Four hundred and ten bottles, equivalent to $34\frac{2}{12}$ cases, had been found broken, and 214 bottles, or $17\frac{10}{12}$ cases, missing.

On September 8, 1944, the entry was liquidated with an allowance being made in duty for the 54 bottles found missing on arrival and in internal revenue taxes for the said 54 bottles and for 338 bottles found broken on arrival. According to Mr. Gilbert, the result of the repacking operation (which indicated that additional bottles

were then broken or missing) was not considered on liquidation because it was the practice to liquidate an entry prior to the withdrawal of all the merchandise. No protest was filed against this liquidation.

Between June 11, 1946, and April 4, 1947, 60 cases out of the 348 repacked cases were withdrawn for consumption, and on May 7, 1947, the remaining 288 cases were abandoned to the Government under section 563 of the Tariff Act of 1930.

At the time of entry, this merchandise was subject to duty on the rum at the rate of $2.50 per gallon and on the bottles at ⅛ cent per pound, and to internal revenue taxes at the rate of $6 per gallon. However, by the time of the first withdrawal, the rate of tax was $9 per gallon. Duties and taxes were computed in the liquidation of September 8, 1944, as follows:

Duties:
On 4,789.2 gallons (allowance being made for 54 bottles missing) at
 $2.50 per gallon_____ $11, 973. 00
On 37,381 pounds of glass (allowance being made for 392 bottles)
 at ⅛ cent per pound_____ 62. 30

$12, 035. 30

Internal revenue taxes:
On 4,721.6 gallons (allowance being made for 54 bottles missing
 and 338 bottles broken) at $9 per gallon_____ $42, 494. 40

There was no change in the rates of duties or of internal revenue taxes, except that heretofore mentioned, while this merchandise or any part thereof was in warehouse or at the times when portions were withdrawn.

It further appears that proportional amounts of the duties and internal revenue taxes were paid to the collector at the port of Philadelphia on 1,060 cases, as they were from time to time withdrawn for consumption. The amounts due on the 600 cases sent to Los Angeles were collectible there, except as to the 63 bottles found broken on arrival, since the collector there was chargeable only for the actual quantity he received. However, the collector at Philadelphia granted an allowance to the importer in internal revenue taxes, but not in duties, for the said 63 bottles.

Allowance was made in duties and taxes for the 288 cases abandoned to the Government, and in internal revenue taxes for 72 bottles found broken on repacking (in addition to the bottles for which allowance had been made on liquidation). On December 7, 1950, a demand was made for the balance of duties and taxes which had not been paid and for which no allowance had been granted, less the amounts of certain overpayments which had been made.

To recapitulate:

| | Cases | Amounts |
|---|---|---|
| Duties were assessed on the liquidation of September 8, 1944, on 4,789.2 gallons of wine and 37,381 pounds of glass _____ | 1995½ | $12, 035. 30 |
| Duties were collected on the amounts withdrawn for consumption _____ | 1060 | $6, 437. 37 |
| Credited for cases transported to Los Angeles _____ | 594¾ | [1] 3, 587. 33 |
| Credited for cases abandoned _____ | 288 | 1, 737. 12 |
| Duties demanded on the balance: | | |
| 63 bottles broken on arrival at Los Angeles _____ | 5¼ | 31. 67 |
| 52 cases found empty after repacking (less 4½ cases allowed on liquidation) _____ | 47½ | 285. 61 |
| Totals _____ | 1995½ | $12, 079. 10 |
| Less credit for overpayment on entry for consumption __ | _____ | 43. 80 |
| | | $12, 035. 30 |

| | Cases | Amounts |
|---|---|---|
| Taxes were assessed on the liquidation of September 8, 1944, on 4,721.6 gallons _____ | 1967⅓ | $42, 494. 40 |
| Taxes collected on cases withdrawn for consumption ___ | 1060 | $22, 936. 50 |
| Credited for cases transported to Los Angeles _____ | 594¾ | [2] 12, 846. 60 |
| Credited for 63 bottles broken on arrival at Los Angeles _____ | 5¼ | 113. 40 |
| Credited for cases abandoned _____ | 288 | 6, 220. 80 |
| Credited for 72 bottles found broken on repacking ____ | 6 | 129. 60 |
| Taxes demanded on 160 bottles found missing on repacking _____ | 13⅓ | 288. 00 |
| Totals _____ | 1967⅓ | $42, 534. 90 |
| Less credit for overpayment on entry for consumption __ | _____ | 40. 50 |
| | | $42, 494. 40 |

[1] This figure does not appear in the testimony, but has been computed in accordance with the method there indicated, i. e.:

594¾ cases (600 cases less 63 bottles broken), containing 2.4 gallons of rum per case, at $2.50 per gallon= $3,568.50, plus glass (19 pounds per case) at ⅙ cent per pound=$18.83, making a total of $3,587.33.

[2] This figure does not appear in the testimony, but has been computed in accordance with the method there indicated, i. e.:

594¾ cases (600 cases less 63 bottles broken), containing 2.4 gallons of rum per case, at $9 per gallon= $12,846.60.

A protest was filed against the collector's demand of December 7, 1950, but, when the case was called for trial, counsel for the importer conceded that it had been filed 61 days after the demand, and it was dismissed as untimely. *Spatola Wines, Inc.* v. *United States*, 27 Cust. Ct. 364, Abstract 56089.

Thereafter, on December 5, 1951, the importer made the demand upon the collector heretofore mentioned, and, when said demand was refused, the protest before us was filed.

It is plaintiff's claim that the liquidation of September 8, 1944, was a tentative estimate of the rate and amount of duties and taxes to be

paid when the merchandise was withdrawn; that the amounts ultimately demanded and assessed by the collector were different; and that such amounts were determined by informal methods, not in conformity with section 505 of the Tariff Act of 1930.

Section 505 provides that upon receipt of certain specified reports, the collector shall ascertain, fix, and liquidate the rate and amount of duties to be paid upon the merchandise and give notice thereof in the form and manner prescribed by the Secretary of the Treasury. In the instant case, it is not claimed that the notice of the liquidation of September 8, 1944, was not in the form and manner prescribed by the regulations. It is presumed, therefore, that it was given in accordance with the statute and the regulations issued thereunder. *V. Mueller & Co.* v. *United States*, 28 C. C. P. A. (Customs) 249, C. A. D. 152.

Plaintiff's claim is rather that the liquidation of September 8, 1944, was incomplete and that the final amounts due were determined later. As the above statements show, neither the rates nor the final amounts computed were ever changed. As portions of the merchandise were withdrawn for consumption, duties and taxes, as determined by the liquidation, were paid thereon. Credit was given on the collector's ledger sheet for the cases abandoned, for those transported to Los Angeles, and, in taxes, for certain bottles found broken on repacking or on arrival at Los Angeles. The balance demanded covered duties on bottles found broken on arrival at Los Angeles and on cases found empty after repacking and taxes on bottles found missing after repacking.

The collector has a right to liquidate warehouse entries prior to the withdrawal of the merchandise, and, ordinarily, the plaintiff's right to protest and the collector's right to reliquidate terminate at the expiration of the 60-day period after liquidation. *Merritt* v. *Cameron*, 137 U. S. 542; *United States* v. *F. B. Vandegrift & Co.*, 17 C. C. P. A. (Customs) 127, T. D. 43455; *United States* v. *Andrews & Co. (Inc.)*, 14 Ct. Cust. Appls. 62, T. D. 41576; *Hiram Walker & Sons, Inc.* v. *United States*, 25 C. C. P. A. (Customs) 189, T. D. 49293 (affirmed on rehearing, 26 C. C. P. A. (Customs) 121, C. A. D. 4); *John S. Phipps* v. *United States*, 22 C. C. P. A. (Customs) 595, T. D. 47601.

However, where the law or the facts of the case postpone the final or possible final determination of the rate or amount of duties or taxes until withdrawal of the merchandise, the collector's liquidation does not become effective until withdrawal. Consequently, the importer's time to protest the liquidation does not begin to run until withdrawal and is timely if made within 60 days thereafter. *Taylor & Co.* v. *United States*, 11 Ct. Cust. Appls. 15, T. D. 38636; *Bertrose Co.* v. *United States*, 12 Ct. Cust. Appls. 19, T. D. 39893; *United States* v.

*F. B. Vandegrift & Co., supra; Matson Navigation Co.* v. *United States,* 14 Cust. Ct. 110, C. D. 921. Likewise, since the collector's time to reliquidate expires 60 days after the effective date of liquidation, he cannot make a reliquidation or a demand not based upon the original liquidation after that time. *John S. Phipps* v. *United States, supra; United States* v. *Westco Liquor Products Co.,* 38 C. C. P. A. (Customs) 101, C. A. D. 446; *Joseph E. Seagram & Sons, Inc.* v. *United States,* 15 Cust. Ct. 95, C. D. 951.

However, a collector's demand made after withdrawal but based upon a prior liquidation is an affirmation of his original decision and does not extend the time within which the importer may protest nor is it an exaction against which a protest will lie. *Hiram Walker & Sons, Inc.* v. *United States, supra; United States* v. *Mexican Petroleum Corp.,* 28 C. C. P. A. (Customs) 90, C. A. D. 130. In such cases, since there has been but one liquidation and due notice thereof, and no reliquidation, it follows that no further notice is required under section 505 or the regulations issued thereunder.

The merchandise involved herein was subject to customs duties and internal revenue taxes. Prior to the amendment of paragraph 813, Tariff Act of 1930, by Public Law 612 (62 Stat. 344), effective June 8, 1948, duties on liquor were required to be computed on the basis of the imported quantity. *Hiram Walker & Sons, Inc.* v. *United States, supra; Park & Tilford Import Corporation* v. *United States,* 26 C. C. P. A. (Customs) 342, C. A. D. 38; *United States* v. *Siegfried Lowenthal Co.,* 31 C. C. P. A. (Customs) 19, C. A. D. 244. However, under the internal revenue law, taxes were and are imposed upon liquors in bond, whether imported or domestic, upon the quantity actually withdrawn for consumption. *Louis T. Snow & Co.* v. *United States,* 21 Cust. Ct. 13, C. D. 1118; *United States* v. *R. C. Williams & Co., Inc.,* 40 C. C. P. A. (Customs) 130, C. A. D. 508. Consequently, the liquidation herein could not become effective until withdrawal. Since the merchandise was withdrawn at different times, the liquidation must be treated as if separately made as to each portion withdrawn. As there was no reliquidation, the importer had 60 days after each withdrawal in which to protest the liquidation insofar as it concerned the quantity withdrawn. At the expiration of that period, no protest having been filed, the liquidation became thus far final and conclusive upon all parties. The same reasoning applies to the portion abandoned, the effective date of the liquidation being the date of abandonment.

It is more difficult to determine the time at which the liquidation became effective as to the amounts never withdrawn because found missing or lost upon repacking. It is clear, however, that this could be no later than the time of the collector's demand of December 7, 1950, which, in effect, affirmed the liquidation as to that merchandise.

See *Badische Co.* v. *United States*, 30 Treas. Dec. 680, T. D. 36348. Since the plaintiff's protest against the demand was filed more than 60 days thereafter, it was too late, and the liquidation has become final and conclusive as to this portion of the merchandise also.

Since the record does not show whether the portion transported to Los Angeles has been withdrawn for consumption or whether there was a reliquidation at that port, we cannot determine whether the liquidation of September 8, 1944, has become final as to that part of the merchandise.

We conclude that plaintiff's claims are untenable. The entry herein was liquidated on September 8, 1944, and there is no evidence that notice thereof was not properly posted in accordance with section 505 and the regulations issued thereunder. While the liquidation may not have been effective at the time made, it became final and conclusive as the merchandise was withdrawn for consumption or otherwise disposed of, and no reliquidation was made by the collector.

Plaintiff filed no timely protest against the liquidation but is now, in effect, attempting to extend the statutory period by claiming that the liquidation was illegal and by demanding that the collector make a legal liquidation and by protesting his refusal to make a further liquidation. This plaintiff may not do. The legality of a liquidation may be challenged only by a protest filed within 60 days after the effective date thereof. *Gallagher & Ascher* v. *United States*, 21 C. C. P. A. (Customs) 313, T. D. 46832; *Wood & Selick, Inc.* v. *United States*, 24 C. C. P. A. (Customs) 355, T. D. 48804. That time has passed. Moreover, a protest does not lie against a collector's refusal to liquidate or to reliquidate an entry for any reason other than for clerical error. *Hiram Walker & Sons, Inc.* v. *United States, supra*; *United States* v. *Astra Bentwood Furniture Co.*, 28 C. C. P. A. (Customs) 205, C. A. D. 147; *United States* v. *B. Holman, Inc.*, 29 C. C. P. A. (Customs) 3, C. A. D. 164; *Robt. Bosch Magneto Co., Inc.* v. *United States*, 2 Cust. Ct. 519, Abstract 40309. In the case last cited, the court, after pointing out that the protest had been filed long after liquidation, stated:

* * * Plaintiff having slept on his rights should not now be allowed to come before the court by the circuitous route of filing objections with the Treasury Department and thereby obtaining a later refusal of the collector from which it could file a protest. We know of no authority in the statute or the decisions for such a course.

Neither may the plaintiff herein come before the court by the circuitous route of demanding that the collector liquidate or reliquidate the entry and filing a protest against his refusal to do so.

For the reasons stated, the motion to dismiss the protest herein is granted. Judgment will be rendered accordingly.