(C. D. 1701)

GLASER BROS. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided May 12, 1955)

*Lawrence & Tuttle* (*Walter I. Carpeneti, George R. Tuttle,* and *Charles F. Lawrence* of counsel) for the plaintiff.
*Warren E. Burger,* Assistant Attorney General (*Daniel I. Auster, Mollie Strum,* and *William J. Vitale,* trial attorneys), for the defendant.

Before EKWALL and JOHNSON, Judges

JOHNSON, Judge: This is a protest against a demand of the collector of customs at the port of San Francisco for duties on a quantity of Cuban rum found missing in warehouse upon a regauging made subsequent to the abandonment of 50 barrels thereof under section 563 of the Tariff Act of 1930. Various claims are made in the protest but that chiefly relied on is that duty should not have been collected on any quantity in excess of that subject to internal revenue tax, as provided in paragraph 813 of the Tariff Act of 1930, as amended by Public Law 612 (62 Stat. 344).

The pertinent statutory provisions are as follows:

PAR. 813 [as amended by the Customs Administrative Act of 1938]. There shall be no constructive or other allowance for breakage, leakage, or damage on wines, liquors, cordials, or distilled spirits, except that when it shall appear to the collector of customs from the gauger's return, verified by an affidavit by the importer to be filed within fifteen days after the delivery of the merchandise, that a cask or package has been broken or otherwise injured in transit from a foreign port and as a result thereof a part of its contents, amounting to 10 per centum or more of the total value of the contents of the said cask or package in its condition as exported, has been lost, allowance therefor may be made in the liquidation of the duties.

Public Law 612 [62 Stat. 344]. * * * That paragraph 813 of schedule 8 of the Tariff Act of 1930 is amended to read as follows:

"PAR. 813. Notwithstanding any other provision of this Act, the duties imposed on beverages in this schedule which are subject also to internal revenue taxes shall be imposed only on the quantities subject to such taxes."

SEC. 2. This amendment shall be effective as to all such merchandise entered, or withdrawn from warehouse, for consumption on or after the day following the date of the enactment of this Act and shall apply also to any such merchandise entered or withdrawn before that day with respect to which the liquidation of the entry or withdrawal, the exaction, or the decision as to dutiable quantity has not become final by reason of section 514, Tariff Act of 1930.

Approved June 8, 1948.

The facts relating to the shipment herein as established by the entry papers and the testimony of Leo Joseph O'Reilly, administrative officer in charge of liquidation at the port of San Francisco, are as follows:

One hundred barrels of Cuban rum were entered for warehouse at the port of San Francisco on or about January 6, 1944. Fifty barrels were withdrawn on February 1, 1944, and duty and internal revenue tax was paid thereon. On December 8, 1944, the entry was liquidated and the duty and internal revenue tax on the entire 100 barrels determined.

Subsequent to liquidation, the importer, on November 4, 1947, pursuant to section 563 of the Tariff Act of 1930, abandoned the 50 barrels still remaining in warehouse. Before destroying them, the collector regauged the merchandise and made an allowance in duty on the quantity found and destroyed under customs supervision. On January 30, 1948, the collector demanded $1,045.32 in duty for the quantity of liquor not found in the barrels at the time of regauging. No internal revenue tax was assessed upon the latter quantity.

On March 26, 1948, the importer filed a protest against this demand. According to notations on copies of the protest and of the demand among the official papers, the protest was allowed by the collector on June 25, 1948, and the demand canceled. The testimony on this point is as follows:

A. On June 26, 1948, the importer made a personal appeal to the collector for reconsideration of the demand for $1,045.32 because of the recent, at that time enactment of Public Law 612.

Q. What did the collector do about it?—A. The collector, within 90 days of the time the protest was filed and specifically on April 13th—no, no.

Q. On June 28—June 26th, the importer asked the collector to give him some relief in view of Public Law 612. What did he do?—A. The collector within the 90 days of the filing of the protest allowed the protest and asked the Court to send the papers back; they had gone prematurely to the Court. The Court advised the collector it could not be done at that time; that the matter would have to go to trial on the merits.

Q. I think there are some facts that would have to be inferred, Mr. O'Reilly. June 26, 1948, the importer appealed to the collector to cancel that $1,045.32. Following his protest of March 26, 1948, is it not so that on that date, June 26, 1948, the collector acted with regard to the importer's protest?—A. And, allowed it.

Q. But, and I guess this will clear it up, prior to June 26, 1948, the collector had forwarded the particular protest, namely 173353–K, to the Court?—A. Yes, prematurely.

On April 13, 1949, the protest was dismissed by the court as untimely on the ground that it had been filed more than 60 days after the liquidation of December 8, 1944. *Glaser Bros.* v. *United States,* 22 Cust. Ct. 285, Abstract 53032.

Thereafter, the collector was directed by the Bureau of Customs to follow the court's ruling and a bill for $1,045.32 on the basis of the December 8, 1944, liquidation was issued on November 3, 1949, and paid on December 6, 1949. On December 29, 1949, the protest before us was filed.

Subsequently, a motion was made by the Government to dismiss this protest as untimely, but the same was denied.

Because of the rather involved fact situation before us, it is evident that the validity and effect of each prior step must be examined in order to arrive at a determination of the present claim.

We have recently had occasion to consider the legal effect of liquidations of warehouse entries prior to the withdrawal of the merchandise. *The American Distilling Company* v. *United States,* 32 Cust. Ct. 168, C. D. 1598; *Spatola Wines, Inc.* v. *United States,* 32 Cust. Ct. 181, C. D. 1601; *Schenley Import Corp.* v. *United States,* 33 Cust. Ct. 37, C. D. 1631. In those cases, we pointed out that the collector has a right to liquidate warehouse entries prior to withdrawal and that the importer's right to protest and the collector's right to reliquidate ordinarily terminate at the expiration of the 60-day period after liquidation, but that where the law or facts postpone the final or possible final determination of the rate or amount of duty or taxes until withdrawal, the liquidation does not become effective until withdrawal, and the importer may protest and the collector reliquidate within 60 days thereafter. We also noted that a demand made after withdrawal, but based upon a prior liquidation, is an affirmation of the original decision and does not extend the time within which the importer may protest nor is it an exaction against which a protest will lie. In *Spatola Wines, Inc.* v. *United States, supra,* we stated (p. 187):

The merchandise involved herein was subject to customs duties and internal revenue taxes. Prior to the amendment of paragraph 813, Tariff Act of 1930, by Public Law 612 (62 Stat. 344), effective June 8, 1948, duties on liquor were required to be computed on the basis of the imported quantity. *Hiram Walker & Sons, Inc.* v. *United States, supra; Park & Tilford Import Corporation* v. *United States,* 26 C. C. P. A. (Customs) 342, C. A. D. 38; *United States* v. *Siegfried Lowenthal Co.,* 31 C. C. P. A. (Customs) 19, C. A. D. 244. However, under the internal revenue law, taxes were and are imposed upon liquors in bond, whether imported or domestic, upon the quantity actually withdrawn for consumption. *Louis T. Snow & Co.* v. *United States,* 21 Cust. Ct. 13, C. D. 1118; *United States* v.

*R. C. Williams & Co., Inc.*, 40 C. C. P. A. (Customs) 130, C. A. D. 508. Consequently, the liquidation herein could not become effective until withdrawal. Since the merchandise was withdrawn at different times, the liquidation must be treated as if separately made as to each portion withdrawn. As there was no reliquidation, the importer had 60 days after each withdrawal in which to protest the liquidation insofar as it concerned the quantity withdrawn. At the expiration of that period, no protest having been filed, the liquidation became thus far final and conclusive upon all parties. The same reasoning applies to the portion abandoned, the effective date of the liquidation being the date of abandonment.

It is more difficult to determine the time at which the liquidation became effective as to the amounts never withdrawn because found missing or lost upon repacking. It is clear, however, that this could be no later than the time of the collector's demand of December 7, 1950, which, in effect, affirmed the liquidation as to that merchandise.

Applying these principles to the instant case, we find that the liquidation of December 8, 1944, could not have become effective as to the 50 barrels remaining in warehouse until the date of abandonment and that, as to the amounts never withdrawn because found missing upon regauging, the liquidation became effective no later than the collector's demand of January 30, 1948, which levied duty upon such merchandise. Under the law then in force, remission or refund of duties upon merchandise not actually contained in the casks at the time of abandonment was not permitted. *United States* v. *Siegfried Lowenthal Co.*, 31 C. C. P. A. (Customs) 19, C. A. D. 244; *Geo. Wm. Rueff, Inc.* v. *United States*, 13 Cust. Ct. 165, C. D. 888.

Had these principles and all of the facts herein been brought to our attention at the time the protest of March 26, 1948, was before us, it may be that that protest would not have been dismissed as untimely. However, since no appeal was taken from our judgment nor was any application for rehearing filed, the said judgment, even if erroneous, has become final and conclusive on all parties. *United States* v. *Kurtz, Stuböeck & Co.*, 5 Ct. Cust. Appls. 144, T. D. 34192; *O'Connor-Harrison & Co. et al.* v. *United States*, 15 Ct. Cust. Appls. 214, T. D. 42239; *Aris Gloves, Inc.* v. *United States*, 20 Cust. Ct. 102, C. D. 1091, and authorities there cited. No timely protest having been filed herein, the liquidation, which became effective as to the missing merchandise no later than January 30, 1948, became final and conclusive on all parties 60 days thereafter, unless subsequent events may be considered such an exaction as will give the importer a further right of protest. *Scherk Importing Co.* v. *United States*, 17 C. C. P. A. (Customs) 135, 138, T. D. 43470; *Parrott & Co. et al.* v. *United States*, 30 Cust. Ct. 133, C. D. 1511.

We turn, therefore, to the effect of the collector's action purporting to allow the protest of March 26, 1948. It has been held that where a protest is untimely, any action taken by the collector as to the reliquidation of the entry is null and void and that a protest against

such a purported reliquidation is of no effect. *Joseph E. Seagram & Sons, Inc.* v. *United States*, 15 Cust. Ct. 95, C. D. 951. Since the protest of March 26, 1948, has been held untimely, the action of the collector attempting to allow it is null and void.

Even if the protest were considered timely, the action of the collector herein was not effective. Under section 515 of the Tariff Act of 1930, the collector has 90 days after the filing of a protest in which to review his decision and modify it in whole or in part. Since the protest herein was filed on March 26, 1948, the last day on which the collector could act was June *24*, 1948. While the witness stated generally that the collector allowed the protest within 90 days of filing it, he said more specifically that the importer asked the collector to act on June *26*, 1948. The notations on the copies of the protest and of the demand give the date as June *25*, 1948. There is nothing to show that any action was taken on June 24, 1948, or prior thereto. We conclude that while the collector may have thought that his action was taken within the 90-day period, actually it was not. By the time he did act, he had lost jurisdiction and had no authority to cancel the demand or allow the protest. *John S. Phipps* v. *United States*, 22 C. C. P. A. (Customs) 595, T. D. 47601; *United States* v. *Westco Liquor Products Co.*, 38 C. C. P. A. (Customs) 101, C. A. D. 446; *Parrott & Co. et al.* v. *United States, supra.*

The collector's action being a nullity, the liquidation became final and conclusive on all parties 60 days after the effective date thereof.

The importer urges, nevertheless, that it was entitled to rely upon the collector's cancellation of this earlier demand, citing *J. & J. Eager et al.* v. *United States*, 60 Treas. Dec. 764, T. D. 45240. In that case, protest was filed against a demand of the collector, dated September 15, 1921. It appeared that the entry had been liquidated under the Tariff Act of 1913 and the Revenue Act of 1917; that while a portion of the merchandise was in warehouse, the Internal Revenue Act of 1918 was enacted; that the collector reliquidated under said act but later canceled his reliquidation. Subsequently, a court decision held that such merchandise was subject to duties under the Tariff Act of 1913 and the Internal Revenue Act of 1918, and, apparently, a new demand was made. While the court stated that the importers were entitled to rely upon the avoidance of the reliquidation, it held that the protests, filed from 6 months to 2 years after the date of the voided reliquidation, were untimely, and they were dismissed. No new right of protest against the demand was allowed the importer because of the attempted avoidance of the reliquidation.

In the instant case, the importer knew the date on which its protest was filed and, since it was the instigator of the collector's attempted cancellation, it must have known the date that action was taken.

Even if it relied upon that action at the time when the protest came up for hearing, it learned of the Government's position that the protest was untimely. Nevertheless, the importer did not oppose the Government's motion nor place the facts before the court nor appeal from the court's decision and judgment dismissing the protest for untimeliness. Under such circumstances, the importer is not now entitled to any additional rights or remedies because of the collector's purported cancellation of the demand and allowance of the protest.

The protest now before us is directed against the collector's demand of November 3, 1949. By that time, as we have shown, the liquidation had become final and conclusive upon all parties. The demand was based upon that liquidation and is not an exaction against which a protest will lie. *United States* v. *Andrews & Co. (Inc.)*, 14 Ct. Cust. Appls. 62, T. D. 41576; *Scherk Importing Co.* v. *United States, supra*; *Hiram Walker & Sons, Inc.* v. *United States*, 25 C. C. P. A. (Customs) 189, T. D. 49293, affirmed on rehearing, 26 C. C. P. A. (Customs) 121, C. A. D. 4. Therefore, the protest herein must be dismissed. Judgment will be rendered accordingly.